******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# GEORGE W. NORTHRUP ET AL. *v.* HENRY J. WITKOWSKI, JR., ET AL.
## (SC 20023)

Robinson, C. J., and Palmer, McDonald,
D'Auria, Kahn and Ecker, Js.

*Syllabus*

Pursuant to statute (§ 52-557n [a] [2] [B]) and the common law of this state, respectively, municipalities and their employees enjoy qualified immunity from liability for their negligent acts or omissions in the performance of duties that require the exercise of judgment or discretion.

The plaintiffs, who reside in the borough of Naugatuck on a particular parcel of property that is prone to flooding, appealed to the Appellate Court from the trial court's judgment in favor of the defendants, the borough and several of its officials, which was rendered on the basis of governmental immunity. The plaintiffs had alleged, inter alia, that the defendants' negligence caused their property to be inundated by water on eight separate occasions. Specifically, the plaintiffs had alleged that a nearby municipally owned catch basin in the area routinely became clogged or otherwise inadequately redirected storm water away from their property. In support of their motion for summary judgment, the defendants claimed that the plaintiffs' negligence claims were barred by governmental immunity because they involved acts or omissions that required the exercise of judgment or discretion. In granting that motion, the trial court concluded that, because the municipal ordinance setting forth the general duties of the relevant municipal department did not contain specific directions or mandates as to how those duties should be discharged, the plaintiffs' claims necessarily pertained to discretionary acts or omissions. The trial court acknowledged this court's decision in *Spitzer* v. *Waterbury* (113 Conn. 84), which held that the repair and maintenance of municipally owned drainage systems are ministerial functions, but concluded that, under more recent case law, the duty to repair and maintain drainage systems is discretionary unless an ordinance prescribes the particular manner in which that duty is to be discharged. The plaintiff subsequently appealed from the trial court's judgment in favor of the defendants to the Appellate Court, which distinguished the facts of *Spitzer* and ultimately agreed that there was no genuine issue of material fact with respect to whether the allegedly negligent omissions in the present case were discretionary in nature. Accordingly, the Appellate Court affirmed the trial court's judgment, and the plaintiffs, on the granting of certification, appealed to this court. *Held* that the Appellate Court properly upheld the trial court's granting of summary judgment in favor of the defendants, this court having concluded that the borough's duty to maintain and repair its drainage system was discretionary rather than ministerial in nature and, therefore, subject to governmental immunity: neither the question of whether the duty to repair and maintain the drainage system was imposed by statute or voluntarily assumed, nor the distinction between construction and repair, was relevant to consideration of the nature of the defendants' duty, because, under modern principles of governmental immunity, the salient consideration in determining whether that duty was discretionary or ministerial is whether any statute, charter provision, ordinance, regulation, rule, policy, or any other directive required the defendants to act in a prescribed manner, and, accordingly, the defendants could be held liable to the plaintiffs only if there was some legal directive prescribing the specific manner in which the defendants were required to maintain and repair the borough's storm drainage system; moreover, the plaintiffs did not challenge the Appellate Court's conclusion that the language of the relevant municipal ordinance did not, in and of itself, create a ministerial duty to repair and maintain the drainage system, and, even if this court were to assume that a policy or rule from a municipal agency could give rise to a ministerial duty, deposition testimony from the borough's superintendent of streets evincing an annual maintenance schedule and a general policy of attempting to respond to public com-

plaints about clogged storm drains was insufficient to establish the existence of such a policy or rule that could convert the borough's discretionary duty mandated by ordinance into a ministerial duty, as a contrary conclusion would disincentivize municipalities from making virtually any attempt to ensure that their discretionary duties are regularly and properly carried out; furthermore, this court could not conclude that the defendants had breached a ministerial duty by failing to conduct any maintenance on the basin at issue because the plaintiffs cited no evidence that would support such a finding, and, even if they had, a general duty to maintain and repair the drainage system as a whole would not encompass a judicially enforceable duty to maintain and repair each individual component of that system.

*Spitzer* v. *Waterbury* (113 Conn. 84), to the extent it concluded that municipal duties with respect to the maintenance and repair of drains and sewers are ministerial in nature, overruled.

(*One justice dissenting*)

Argued October 16, 2018—officially released July 2, 2019

*Procedural History*

Action to recover damages for the alleged negligence of the named defendant et al. in maintaining and repairing certain municipal storm water systems, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Blue, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiffs appealed to the Appellate Court, *Alvord, Prescott* and *Mullins, Js.*, which affirmed the trial court's judgment, and the plaintiffs, on the granting of certification, appealed to this court. *Affirmed.*

*Joshua F. Gilman*, for the appellants (plaintiffs).

*Thomas R. Gerarde*, with whom, on the brief, was *Beatrice S. Jordan*, for the appellees (defendants).

*Aaron S. Bayer* and *Tadhg Dooley* filed a brief for the city of Bridgeport et al. as amici curiae.

*Opinion*

ROBINSON, C. J. This certified appeal requires us to consider the continued vitality of this court's decision in *Spitzer* v. *Waterbury*, 113 Conn. 84, 88, 154 A. 157 (1931), which held that "[t]he work of constructing drains and sewers, as well as that of keeping them in repair, is ministerial, and the municipality is responsible for negligence in its performance." The plaintiffs, Helen M. Northrup, George W. Northrup, and Timothy Northrup,[1] brought this action against the defendants, the borough of Naugatuck (town) and several town officials,[2] claiming, inter alia, that the defendants' negligence in maintaining and repairing the town's storm drains and drainage pipes had caused the repeated flooding of the plaintiffs' residence. The plaintiffs now appeal, upon our granting of their petition for certification,[3] from the judgment of the Appellate Court affirming the trial court's granting of the defendant's motion for summary judgment on the ground that the negligence claims were barred because, under more recent cases refining and clarifying *Spitzer*, the maintenance of storm drains and drainage systems is a discretionary function subject to governmental immunity, rather than a ministerial function, the negligent performance of which can subject a municipality to liability. *Northrup* v. *Witkowski*, 175 Conn. App. 223, 250, 167 A.3d 443 (2017). We disagree with the plaintiffs' claim that the Appellate Court improperly failed to follow *Spitzer* because we conclude that decision must be overruled in light of modern case law governing the distinction between ministerial and discretionary duties. Accordingly, we affirm the judgment of the Appellate Court.

The opinion of the Appellate Court aptly sets forth the following facts and procedural history. "The plaintiffs reside on property located in the town at 61 Nettleton Avenue. On eight different occasions between 2009 and 2012, the plaintiff's property was damaged when surface rainwater and/or 'black water'[4] inundated the property because the single catch basins in the area routinely became clogged or inadequately redirected water away from the property.

"After the first occurrence in July, 2009, Helen . . . contacted [James] Stewart, who, at that time, was the [town] engineer. He told her that the flooding was the result of a rare storm and that it would not happen again. Despite his assurance, however, flooding occurred again in October and December of that year. The plaintiffs continued to contact Stewart, to no avail. The plaintiffs made several requests to the town for sandbags; one such request was granted, but others were denied or simply ignored.

"The town received a report in October, 2009, from an engineering firm about the Nettleton Avenue neighborhood. The report indicated that, over the past forty

years, many residences in the neighborhood had experienced periodic flooding of their properties following periods of heavy rainfall. It further indicated that the drainage system in the area was likely to experience flooding after rainfalls of two inches or more, which could occur several times a year. The report attributed the flooding to the fact that runoff was required to flow through relatively narrow drainpipes that were in poor to fair condition and that the majority of catch basins in the area were old and had small openings that often became overgrown with vegetation or obstructed by trash. The report recommended that the town construct new, larger storm drains to handle the storm runoff in the area, but the town failed to adopt that proposal. The plaintiffs' property flooded again in July of 2010, March and August of 2011, and June and September of 2012." (Footnote in original.) Id., 226–27.

On June 4, 2013, the plaintiffs filed the operative second amended complaint alleging negligence against Henry J. Witkowski, Stewart, and the town, and recklessness against the individual defendants. See footnote 2 of this opinion. In addition, the plaintiffs alleged negligent infliction of emotional distress against Witkowski, Stewart, and the town.

"On October 30, 2015, the defendants filed [a] motion for summary judgment . . . . The defendants submitted a supporting memorandum of law, attached to which were partial transcripts from the depositions of Helen . . . and the individual defendants, as well as an affidavit by Stewart. The defendants argued that the negligence counts, including those alleging negligent infliction of emotional distress, were barred by governmental immunity because they involved acts or omissions that required the exercise of judgment or discretion, and no other recognized exception to governmental immunity applied. The defendants further argued that the recklessness counts brought against the individual defendants also failed as a matter of law because, on the basis of the allegations and evidence presented, no reasonable fact finder could determine that the individual defendants had engaged in demonstrably reckless conduct.

"The plaintiffs filed an objection to the motion for summary judgment on November 18, 2015, arguing with respect to the negligence counts that there remained genuine issues of material fact as to whether the defendants were exercising ministerial or discretionary duties and, if discretionary, whether the identifiable person-imminent harm exception to governmental immunity applied." *Northrup* v. *Witkowski*, supra, 175 Conn. App. 228–29.

"On January 20, 2016, the court issued a memorandum of decision granting summary judgment in favor of the defendants on all counts. With respect to the negligence counts, including those counts alleging neg-

ligent infliction of emotional distress, the court concluded that the plaintiffs' specifications of negligence amounted to a 'litany of discretionary omissions' and that their 'allegations boiled down to a claim that the defendants failed to perform their municipal duties in an appropriate manner.' The court determined that the city ordinance on which the plaintiffs relied in opposing summary judgment only set forth the general duties of the [streets commission] without any specific directions or mandates as to how those duties should be discharged." Id., 230.

The trial court acknowledged this court's decision in *Spitzer* v. *Waterbury*, supra, 113 Conn. 88, holding that the repair and maintenance of drainage systems is a ministerial function, but concluded that more recent cases had "refined [the] analysis of the relationship and differences between ministerial and discretionary acts . . . ." *Silberstein* v. *54 Hillcrest Park Associates, LLC*, 135 Conn. App. 262, 272, 41 A.3d 1147 (2012). The trial court concluded that, under those more recent cases, the repair and maintenance of drainage systems are discretionary unless an ordinance "prescribe[s] the *manner* in which the drainage systems are to be maintained . . . ." (Emphasis in original.)

"Accordingly, the court concluded that the defendants' acts or omissions in maintaining the town's drainage system were discretionary in nature. Furthermore, the court concluded that the identifiable person-imminent harm exception to discretionary act immunity was inapplicable as a matter of law because the risk of the property flooding at any given time was indefinite and, thus, did not constitute an imminent harm. The court also granted summary judgment with respect to the recklessness counts, concluding that they also were barred by governmental immunity.

"The plaintiffs filed a motion to reargue and for reconsideration, which the defendants opposed. The court denied the plaintiffs' motion, and [the plaintiffs' appeal to the Appellate Court] followed."[5] *Northrup* v. *Witkowski*, supra, 175 Conn. App. 230.

The Appellate Court held that "to demonstrate the existence of a ministerial duty on the part of a municipality and its agents, a plaintiff ordinarily must point to some statute, city charter provision, ordinance, regulation, rule, policy, or other directive that, by its clear language, compels a municipal employee to act in a prescribed manner, without the exercise of judgment or discretion. See *Violano* v. *Fernandez*, 280 Conn. 310, 323, 907 A.2d 1188 (2006); *Evon* v. *Andrews*, 211 Conn. 501, 506–507, 559 A.2d 1131 (1989); *DiMiceli* v. *Cheshire*, [162 Conn. App. 216, 224–25, 131 A.3d 771 (2016)]; *Grignano* v. *Milford*, 106 Conn. App. 648, 659–60, 943 A.2d 507 (2008)." *Northrup* v. *Witkowski*, supra, 175 Conn. App. 235. The court ultimately concluded that, "although there is language in § 16-32 of the [Naugatuck

Code of Ordinances] that requires the streets commission to maintain and repair the town's storm water sewer system, the ordinance contains no provisions that mandate the time or manner in which those responsibilities are to be executed, leaving such details to the discretion and judgment of the municipal employees.'' Id., 238.

The Appellate Court then acknowledged this court's statement in *Spitzer* v. *Waterbury*, supra, 113 Conn. 88, that the repair and maintenance of drains and sewers are ministerial functions, but it concluded that *Spitzer* was distinguishable on its facts because it involved only the question of whether a drainage system ''as it was planned could handle even ordinary amounts of rain,'' not whether the city had properly maintained and cleaned the system. *Northrup* v. *Witkowski*, supra, 175 Conn. App. 239. In addition, the Appellate Court concluded that the statement in *Spitzer* was dictum. Id., 241. The Appellate Court concluded that, ''[c]onsidered in light of our modern case law analyzing qualified governmental immunity, we are convinced that the [trial] court correctly determined that there was no genuine issue of material fact to be resolved with respect to whether the alleged[ly] negligent acts or omissions of the defendants were discretionary in nature and, thus, subject to immunity.'' Id., 242. Accordingly, the Appellate Court affirmed the judgment of the trial court. Id., 250. This certified appeal followed.[6] See footnote 3 of this opinion.

On appeal to this court, the plaintiffs contend that the Appellate Court incorrectly determined both that *Spitzer* is distinguishable on its facts and that this court's statement in *Spitzer* that the repair and maintenance of drains and sewers are ministerial functions was dictum. Rather, they argue that *Spitzer* is directly on point and is binding authority for the proposition that the duty of a municipality to maintain and repair its drainage system is ministerial and, therefore, that the negligent performance of that duty will subject the municipality to liability. We conclude that we need not determine whether the language in *Spitzer* was dictum because, even if it was not, *Spitzer* must be overruled in light of more modern case law and statutes governing the distinction between ministerial and discretionary duties. We further conclude that the Appellate Court correctly determined that, under those more modern cases, the town's duty to maintain and repair its drainage system was discretionary and, therefore, subject to governmental immunity.

As a preliminary matter, we set forth the standard of review. ''Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The scope of our

appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Meyers* v. *Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 289–90, 87 A.3d 534 (2014).

We next review the law governing governmental immunity. "The [common-law] doctrines that determine the tort liability of municipal employees are well established. . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Violano* v. *Fernandez*, supra, 280 Conn. 318.

"The tort liability of a municipality has been codified in [General Statutes] § 52-557n. Section 52-557n (a) (1) provides that '[e]xcept as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . .' Section 52-557n (a) (2) (B) extends, however, the same discretionary act immunity that applies to municipal officials to the municipalities themselves by providing that they will not be liable for damages caused by 'negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.' " Id., 320.

"Municipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed

manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." (Internal quotation marks omitted.) Id., 318–19.

"This court has identified two other policy rationales for immunizing municipalities and their officials from tort liability. The first rationale is grounded in the principle that for courts to second-guess municipal policy making by imposing tort liability would be to take the administration of municipal affairs out of the hands to which it has been entrusted by law. . . . Second, we have recognized that a civil trial may be an inappropriate forum for testing the wisdom of legislative actions. This is particularly true if there is no readily ascertainable standard by which the action of the government servant may be measured . . . . Thus, [t]he policy behind the exception is to avoid allowing tort actions to be used as a monkey wrench in the machinery of government decision making." (Citation omitted; internal quotation marks omitted.) Id., 319 n.7.

For purposes of determining whether a duty is discretionary or ministerial, this court has recognized that "[t]here is a difference between laws that impose general duties on officials and those that mandate a particular response to specific conditions." *Bonington* v. *Westport*, 297 Conn. 297, 308, 999 A.2d 700 (2010). "A ministerial act is one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment [or discretion] upon the propriety of the act being done."[7] (Internal quotation marks omitted.) *Blake* v. *Mason*, 82 Conn. 324, 327, 73 A. 782 (1909); see also *Benedict* v. *Norfolk*, 296 Conn. 518, 520 n.4, 997 A.2d 449 (2010) (municipal acts are "deemed ministerial if a policy or rule limiting discretion in the completion of such acts exists"); *Pluhowsky* v. *New Haven*, 151 Conn. 337, 347, 197 A.2d 645 (1964) (describing ministerial acts in similar terms). In contrast, when an official has a general duty to perform a certain act, but there is no "city charter provision, ordinance, regulation, rule, policy, or any other directive [requiring the government official to act in a] prescribed manner," the duty is deemed discretionary. *Violano* v. *Fernandez*, supra, 280 Conn. 323.

"In general, the exercise of duties involving inspection, maintenance and repair of hazards are considered discretionary acts entitled to governmental immunity." *Grignano* v. *Milford*, supra, 106 Conn. App. 656. This is so because there ordinarily is no legal directive mandating the specific manner in which officials must perform these tasks. Rather, "[a] municipality necessarily makes discretionary policy decisions with respect to the timing, frequency, method and extent of inspections, maintenance and repairs." Id.; see also *Bonington* v.

*Westport*, supra, 297 Conn. 308–309 (when plaintiff claimed that defendants had improperly or inadequately inspected neighboring property for zoning violations, alleged acts of negligence constituted discretionary acts because no legal authority mandated inspection to be performed in prescribed manner); *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 50–51, 881 A.2d 194 (2005) (in absence of any policy or directive requiring defendants to design, supervise, inspect and maintain trail on defendant's property, defendants "were engaged in duties that inherently required the exercise of judgment," and, therefore, those duties were discretionary in nature); *Evon* v. *Andrews*, supra, 211 Conn. 506–507 (defendants' acts were discretionary in nature because what constitutes reasonable, proper or adequate fire safety inspection to ensure that multifamily residence was in compliance with state and local building codes involves exercise of judgment); *Pluhowsky* v. *New Haven*, supra, 151 Conn. 347–48 (in absence of any legal directive requiring defendants to repair malfunctioning catch basin under specific conditions or in particular manner, duty was discretionary); *Grignano* v. *Milford*, supra, 656–57 (ordinance requiring owner of maritime facility to maintain physical improvements in safe condition imposed discretionary duty because ordinance did not "[prescribe] the manner in which the defendant is to perform reasonable and proper inspection and maintenance activities"); *Segreto* v. *Bristol*, 71 Conn. App. 844, 857–58, 804 A.2d 928 (city's allegedly negligent design and maintenance of stairwell located on premises of senior center that was owned and operated by city was discretionary because determinations of what is reasonable or proper under particular set of circumstances necessarily involve exercise of judgment), cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002).

Consistent with these principles, the Appellate Court concluded in *Silberstein* v. *54 Hillcrest Park Associates*, *LLC*, supra, 135 Conn. App. 273, that the maintenance of storm drains is discretionary in nature. See also *Brusby* v. *Metropolitan District*, 160 Conn. App. 638, 656, 127 A.3d 257 (2015) (in absence of legal directive prescribing manner in which sanitary sewer system was to be maintained or repaired, duty was discretionary). In *Silberstein*, the plaintiffs owned property in the Hillcrest Park neighborhood of Old Greenwich. *Silberstein* v. *54 Hillcrest Park Associates*, *LLC*, supra, 264. The plaintiffs alleged that the defendants, the Hillcrest Park Tax District (tax district) and Hillcrest Park Association, Inc., which were responsible for maintaining and constructing roads and storm sewers in the Hillcrest neighborhood, had negligently failed to do so, resulting in the periodic flooding of the plaintiffs' property. Id., 264–65. The trial court granted the defendant's motion for summary judgment on the ground of governmental immunity. Id., 267. On appeal, the Appellate

Court noted that, although the tax district's bylaws stated clearly that one of the functions of that organization was "to construct and maintain roads . . . drains, [and] storm sewers"; (internal quotation marks omitted) id., 273; the bylaws did not "prescribe the *manner* in which the roads and drainage systems [were] to be maintained, and there [was] no evidence in the record of any procedure or directive governing the manner of their maintenance." (Emphasis in original.) Id. Accordingly, the court concluded that "the manner in which the defendants discharge their duty to maintain the roads and drainage systems plainly involves the exercise of judgment and discretion," and the duty was, therefore, discretionary. Id.

Like the plaintiffs in the present case, the plaintiffs in *Silberstein* had relied on this court's statement in *Spitzer* v. *Waterbury*, supra, 113 Conn. 88, that "[t]he work of constructing drains and sewers, as well as that of keeping them in repair, is ministerial, and the municipality is responsible for negligence in its performance" to support their contention to the contrary. *Silberstein* v. *54 Hillcrest Park Associates, LLC*, supra, 135 Conn. App. 272. In *Silberstein*, the Appellate Court concluded that *Spitzer* was distinguishable on the ground that this court had concluded in *Spitzer* that "a municipality's construction and repair of storm water sewers and drains [were] ministerial because [they were] 'incidental to' the municipality's statutorily imposed duty to maintain its streets and highways. . . . The court [in *Spitzer*] reasoned: 'The duty imposed by statute upon the municipality to maintain the highways within its limits makes it necessary for the municipality to dispose of all surface water falling upon them.' . . . Thus, the municipality was legally obligated to maintain and repair the drains. In contrast to the municipality in *Spitzer*, the defendants in [*Silberstein* were] not charged with having failed to fulfill a duty that was *imposed* upon them by statute. Rather, the plaintiffs claim[ed] that the defendants negligently failed to carry out a duty that they assumed pursuant to the tax district bylaws. The tax district bylaws, however, [did] not prescribe the specific manner in which the duty to maintain and repair the roads, drains and storm sewers is to be performed." (Citations omitted; emphasis in original.) Id., 272, quoting *Spitzer* v. *Waterbury*, supra, 87–88.

The plaintiffs in the present case contend that *Spitzer* is controlling because, as in that case—unlike *Silberstein*—the duty of the defendants to repair and maintain the drainage system "originate[s] from the General Statutes, which require Connecticut municipalities to maintain the highways within their limits."[8] The plaintiffs further contend that *Silberstein* is distinguishable because the plaintiffs in that case alleged that the defendants had negligently failed to install a properly functioning drainage system, and "the decision to *build or construct* storm water systems is almost universally

held to be a governmental discretionary act." (Emphasis added.) In contrast, the plaintiffs in the present case allege that the defendants failed to adequately *maintain and repair* the storm drainage system, which, they argue are ministerial duties. We disagree with both of these claims.

We first address the plaintiffs' contention that the defendants' duty to maintain and repair the sewer system is ministerial because it derives from statute rather from the town's own ordinances or rules. As we have indicated, the Appellate Court also made this distinction in *Silberstein* v. *54 Hillcrest Park Associates, LLC*, supra, 135 Conn. App. 272. In support of the proposition that a duty imposed on a municipality by statute is necessarily ministerial, whereas a duty voluntarily assumed by the municipality is discretionary, the Appellate Court cited only this court's statement in *Spitzer* v. *Waterbury*, supra, 113 Conn. 87, that "[t]he duty imposed by statute upon the municipality to maintain the highways within its limits makes it necessary for the municipality to dispose of all surface water falling upon them." (Internal quotation marks omitted.) *Silberstein* v. *54 Hillcrest Park Associates, LLC*, supra, 272. In turn, *Spitzer* v. *Waterbury*, supra, 87, supported that proposition with a citation to *Bronson* v. *Wallingford*, 54 Conn. 513, 519–20, 9 A. 393 (1887), in which this court suggested, in dictum and without citation to any authority, that a municipality may be held liable for damages caused while carrying out its statutory duty to dispose of surface waters falling on its highways, whereas it would be immune from liability for acts performed pursuant to a duty imposed by the city charter in the absence of any charter provision providing a remedy.[9]

Other cases predating *Spitzer* present a mirror image of this proposition, however, and hold that municipalities may *not* be held liable when they violate public duties that have been imposed on them by the state, whereas municipalities *can* be held liable for the violation of duties that they voluntarily take upon themselves. In *Jones* v. *New Haven*, 34 Conn. 1, 13 (1867), this court stated that "[w]henever a public duty is *imposed* upon a town . . . without its consent, express or implied, such town . . . is not liable to an action for negligence in respect to such duty, unless a right of action is given by statute." (Emphasis added.) In contrast, "when a grant is made to a [municipality] of some special power or privilege *at its request*, out of which public duties grow; and when some special duty is imposed upon a [municipality] not belonging to it under the general law *with its consent*; in these and like cases, if the corporation is guilty of negligence in the discharge of such duty, thereby causing injury to another, it is liable to an action in favor of the party injured." (Emphasis added.) Id., 14; see also *Dyer* v. *Danbury*, 85 Conn. 128, 131, 81 A. 958 (1911) (same). There are also cases

predating *Spitzer* holding that acts performed pursuant to voluntarily assumed duties may be governmental and, therefore, immune from liability, *as well as* acts performed pursuant to duties imposed by statute. See *Hannon* v. *Waterbury*, 106 Conn. 13, 17, 126 A. 876 (1927) ("Whether the duty is directly imposed upon the city or permissive, that is, one which it voluntarily assumed . . . does not change the character of the act or function. The duty in either case will be governmental if the nature and character of [the] act or function be such."); *Pope* v. *New Haven*, 91 Conn. 79, 82, 99 A. 51 (1916) (function may be governmental regardless of whether "the legislature determines the necessity and expediency of the act to be performed" or "the necessity and expediency are left to be determined by the municipality"). We are aware of no authority other than the court's unsupported dictum in *Bronson* v. *Wallingford*, supra, 54 Conn. 519–20, however, that would support *Spitzer*'s suggestion that a duty imposed by statute, as distinct from a duty that is voluntarily assumed by the municipality, is by virtue of that fact ministerial.

In any event, the distinction applied by the court in *Jones* and *Dyer* has been superseded by more recent developments in municipal law and the law governing governmental immunity. As the Appellate Court recognized in *Roman* v. *Stamford*, 16 Conn. App. 213, 219, 547 A.2d 97 (1988), aff'd, 211 Conn. 396, 559 A.2d 710 (1989), "[u]nlike the *Dyer* and *Jones* doctrine of assumption of municipal liability based upon a charter provision, the modern construct of municipal liability rests upon distinctly different considerations." See also id., 218–19 ("construct [set forth in *Jones* and *Dyer*], wherein special powers are granted to or imposed upon the municipality, harkens back to the days before the advent of the principle of home rule" and, therefore, is no longer "a valid conceptualization of the doctrine of actionable private duties of a municipality").[10] Specifically, under modern principles of governmental immunity, the salient consideration in determining whether a municipal duty is discretionary or ministerial is not whether the duty was imposed on the municipality by statute or voluntarily assumed pursuant to its own ordinances or regulations, but whether there is any statute, "city charter provision, ordinance, regulation, rule, policy, or any other directive [requiring the government official to act *in a*] *prescribed manner*." (Emphasis added.) *Violano* v. *Fernandez*, supra, 280 Conn. 323; see also *Roman* v. *Stamford*, supra, 221 (under modern principles of governmental immunity, "[a] ministerial act, as opposed to a discretionary act, refers to [one] which is to be performed in a prescribed manner without the exercise of judgment or discretion" [internal quotation marks omitted]). Accordingly, we disagree with the plaintiffs' argument that *Silberstein* v. *54 Hillcrest Park Associates*, *LLC*, supra, 135 Conn. App. 272, is not controlling because, unlike in *Silberstein*, the

defendants' duty in the present case was imposed by statute.

We next address the plaintiffs' argument that, in contrast to the design of storm water drainage systems, the duty to repair and maintain such systems is ministerial. In support of this claim, the plaintiffs rely on several cases from other jurisdictions. The holdings of those cases, however, can be traced to the outmoded distinction between duties that are imposed on municipalities and those that they voluntarily assume. See *Johnston* v. *District of Columbia*, 118 U.S. 19, 21, 6 S. Ct. 923, 30 L. Ed. 75 (1886) (repair of sanitary sewer is ministerial duty), citing *Child* v. *Boston*, 86 Mass. 41, 52 (1862) (municipality is not liable for defective sanitary sewer plan because creation of plan involved duty of quasi-judicial nature, but could be held liable for negligent care and maintenance of sanitary sewers because those duties were not imposed by legislative authority for public purposes but were voluntarily assumed by municipality); *Barton* v. *Syracuse*, 36 N.Y. 54, 54 (1867) (municipality was liable for negligent failure to repair sanitary sewers because it voluntarily accepted duty and assessed costs on beneficiaries);[11] *Portsmouth* v. *Mitchell Mfg. Co.*, 113 Ohio St. 250, 255–56, 148 N.E. 846 (1925) (citing *Barton* and concluding that municipality cannot be held liable for failure to construct storm sewer but can be held liable for failure to keep storm sewer in repair). In addition, all of these cases either involved or relied on cases involving the maintenance and repair of *sanitary* sewers, which, unlike the maintenance and repair of storm sewers, arguably may be a proprietary function under certain circumstances, even under more modern case law.[12] See footnote 10 of this opinion.

We recognize that, for purposes of imposing liability on a municipality, some Connecticut cases predating *Spitzer* made the distinction between a municipality's duty to construct roads and sidewalks, and, by extension, the storm drains and sewers that are required to ensure that the roads are functional, as opposed to a duty of maintenance and repair. In *Hoyt* v. *Danbury*, 69 Conn. 341, 351, 37 A. 1051 (1897), for example, this court observed that a municipality's statutory obligation to provide highways "carried with it the correlative right of determining the mode of their construction," and "[a]s to which, out of any appropriate modes of building the particular sidewalk in question, was to be chosen, it was for the borough to decide; and so long as the mode selected was an appropriate and lawful one, its decision was not subject to collateral review in a suit of this nature." In other words, *Hoyt* recognized that the *construction* of highways is a discretionary function. As to highway *repairs*, this court noted that municipal liability for the failure to keep roads in good repair had been imposed by statute, now codified at General Statutes § 13a-149,[13] "since early colonial

times." Id. The highway defect statute, however, *waives* governmental immunity from claims by travelers on the highway arising from highway defects. See *McIntosh* v. *Sullivan*, 274 Conn. 262, 282, 875 A.2d 459 (2005) (highway defect statute at issue in *Hoyt* "abrogated governmental immunity"). Put differently, the highway defect statute does not *impose a ministerial duty* to repair highways, so that a municipality may be held liable to abutting landowners for breach of that duty. See *Aerotec Corp.* v. *Greenwich*, 138 Conn. 116, 119, 82 A.2d 356 (1951) (highway defect statute "provides no right of recovery to an abutting landowner for damage from a defective highway"). Thus, the distinction made in *Hoyt* between the construction of highways and their repair, which was premised on the highway defect statute, is consistent with the modern rule distinguishing "laws that impose general duties on officials," which impose discretionary duties, "and those that mandate a particular response to specific conditions," which impose ministerial duties. *Bonington* v. *Westport*, supra, 297 Conn. 308.

The authority that *Spitzer* itself cited in support of its statement that the duty to construct and repair drainage systems is ministerial also can be at least partially reconciled with the modern rule. In *Spitzer*, this court relied on a treatise on Municipal Corporations authored by John F. Dillon. See *Spitzer* v. *Waterbury*, supra, 113 Conn. 88, citing 4 J. Dillon, Commentaries on the Law of Municipal Corporations (5th Ed. 1911) §§ 1742 and 1743, pp. 3054–57. That treatise states the following: "[A] municipal corporation *is liable for negligence in the ministerial duty to keep its sewers . . . in repair . . . .*" (Emphasis in original.) 4 J. Dillon, supra, § 1742, p. 3055. A careful review of the treatise, however, reveals that this statement was at least partially premised on the principle that municipalities are "bound to preserve and keep in repair erections [they have] constructed, so that they shall not become a source of *nuisance* to others."[14] (Emphasis altered; internal quotation marks omitted.) Id. Consistent with this principle, it is well established in this state that "towns will not be justified in doing an act lawful in itself in such a manner as to create a nuisance, any more than individuals. And if a nuisance is thus created, whereby another suffer[s] damage, towns like individuals are responsible." (Internal quotation marks omitted.) *Hoffman* v. *Bristol*, 113 Conn. 386, 390, 155 A. 499 (1931); accord *Keeney* v. *Old Saybrook*, 237 Conn. 135, 165, 676 A.2d 795 (1996) ("a municipality may be liable for a nuisance it creates through its negligent misfeasance or nonfeasance"); *Wright* v. *Brown*, 167 Conn. 464, 470, 356 A.2d 176 (1975) ("[l]iability in nuisance can be imposed on a municipality only if the condition constituting the nuisance was created by the positive act of the municipality"); *Prifty* v. *Waterbury*, 133 Conn. 654, 657, 54 A.2d 260 (1947) ("the rule which exempts municipalities

from liability when their employees are acting in discharge of a public duty does not relieve them from liability for the consequences of particular acts which the municipality has directed to be performed and which, from their character or the manner in which they are so ordered to be executed, will naturally work a direct injury to others or create a nuisance"); *Colwell* v. *Waterbury*, 74 Conn. 568, 572–73, 51 A. 530 (1902) (same); *Judd* v. *Hartford*, 72 Conn. 350, 354, 44 A. 510 (1899) (although duty to construct sewer was governmental, municipality could be held liable for negligent failure to remove temporary obstructions after construction because failure to do so turned "city property into a nuisance"); *Mootry* v. *Danbury*, 45 Conn. 550, 556 (1878) (when town constructed bridge over stream that blocked water flow, causing plaintiff's upstream property to flood, it may be held liable because "towns will not be justified in doing an act lawful in itself in such a manner as to create a nuisance, any more than individuals").[15]

The fact that a municipality may be liable for creating a nuisance, however, does not necessarily mean—at least not under our more recent cases—that the act that created the nuisance was ministerial in nature. Indeed, this court has held that "a municipality may be liable for a nuisance . . . even if [its] misfeasance or nonfeasance also constitutes negligence from which the municipality would be immune" because the municipality was engaged in a discretionary function.[16] *Keeney* v. *Old Saybrook*, supra, 237 Conn. 165; but see *Judd* v. *Hartford*, supra, 72 Conn. 353–54 (duty to remove temporary obstructions from sewer so as to prevent creation of nuisance was ministerial).

In other words, unlike Dillon's treatise, which seems to suggest that ministerial acts are the only acts for which a municipality may be held liable and, therefore, that if a municipality can be held liable for creating a nuisance, the municipal function that resulted in the creation of the nuisance must be a ministerial one, our more recent cases have treated nuisance and the violation of a ministerial duty as entirely distinct theories of municipal liability.[17] See *Grady* v. *Somers*, 294 Conn. 324, 335 n.10, 984 A.2d 684 (2009) (governmental immunity does not apply to claims alleging "[1] liability in nuisance, which [may] be imposed . . . only if the condition constituting the nuisance was created by the positive act of the municipality; and [2] the negligent performance of ministerial acts" [internal quotation marks omitted]); see also *Keeney* v. *Old Saybrook*, supra, 237 Conn. 165. Accordingly, although we agree with Dillon's treatise to the extent that it recognizes that there are situations in which a municipality may be held liable for damage caused by a storm sewer system that the municipality was responsible for maintaining and repairing—namely, when the municipality's positive act has created a nuisance—we do not agree

with its suggested inference from that proposition, namely, that the duty to maintain and repair storm sewers is necessarily ministerial.[18] Indeed, if that were the case, municipalities could be held liable for *any* damage caused by their failure to maintain and repair storm sewer systems, even if the "positive act" element of nuisance were not satisfied. See *Wright* v. *Brown*, supra, 167 Conn. 470 ("[l]iability in nuisance can be imposed on a municipality only if the condition constituting the nuisance was created by the positive act of the municipality").

We therefore disagree with the plaintiffs' argument that, in determining whether a municipality's duty with respect to its storm drains and sewers is ministerial or discretionary, the relevant considerations are (1) whether the duty was imposed by statute or, instead, was voluntarily assumed by the town, and (2) whether the municipality was constructing the sewers or, instead, was maintaining or repairing them. Rather, the relevant consideration under well established modern principles of governmental immunity remains whether the duty was a general one or, instead, whether there was a "city charter provision, ordinance, regulation, rule, policy, or any other directive [requiring the government official to act in a] prescribed manner." *Violano* v. *Fernandez*, supra, 280 Conn. 323; see also *Bonington* v. *Westport*, supra, 297 Conn. 308 ("[t]here is a difference between laws that impose general duties on officials and those that mandate a particular response to specific conditions"). To the extent that *Spitzer* v. *Waterbury*, supra, 113 Conn. 84, held otherwise, it is hereby overruled.

We conclude, therefore, that the defendants in the present case may be held liable to the plaintiffs only if there was some legal directive prescribing the specific manner in which they were required to maintain and repair the town's storm sewer system. As we have indicated, the Appellate Court concluded that, "although there is language in § 16-32 of the [Naugatuck Code of Ordinances] that requires the streets commission to maintain and repair the town's storm water sewer system, the ordinance contains no provisions that mandate the time or manner in which those responsibilities are to be executed, leaving such details to the discretion and judgment of the municipal employees."[19] *Northrup* v. *Witkowski*, supra, 175 Conn. App. 238. The plaintiffs do not challenge the Appellate Court's conclusion that the language of that ordinance does not, in and of itself, create a ministerial duty.

Instead, the plaintiffs claim that Witkowski's deposition testimony that the streets commission had developed a schedule to ensure that every catch basin was maintained at least once a year and that, "if there were calls from the public about a basin being blocked or a bad situation that needed to be addressed, we would

attempt to do that," established the existence of a rule or policy that limited the streets commission's discretionary authority under § 16-32 of the Naugatuck Code of Ordinances and thereby created a ministerial duty.[20] In support of this claim, the plaintiffs argue that, in *Mills* v. *Solution, LLC*, 138 Conn. App. 40, 51–52, 50 A.3d 381, cert. denied, 307 Conn. 928, 55 A.3d 570 (2012), the Appellate Court held that, although the use of the mandatory language "shall" in a statute does not necessarily create a ministerial duty, if the municipality has a policy or rule limiting the discretion of public officials in the performance of a mandatory duty that would otherwise be discretionary, the duty is ministerial.[21] We are not persuaded that this is a correct interpretation of *Mills*. Rather, *Mills* is more reasonably interpreted as holding that mandatory statutory language is not sufficient to create a ministerial duty unless the *statute itself* limits discretion in the performance of the mandatory act. See id., 52 ("[w]here the text of the statute explicitly vests the chief of police with the discretion to determine when and how to furnish police protection, we decline to hold that the same statute imposes a ministerial duty on the chief of police to furnish the protection he deems, in his discretion, to be necessary").

We need not decide, however, whether the existence of a municipal agency's "policy or rule" that limits the agency's discretion in performing a duty imposed by ordinance or statute can ever convert a duty that otherwise would be discretionary into a ministerial duty because, even if we were to assume, without deciding, that there are circumstances under which it can, we conclude that Witkowski's testimony would not be sufficient to establish the existence of such a policy or rule in the present case. This court previously has held that a municipality may be held liable for the negligent performance of a duty only if the "the official's duty is *clearly* ministerial." (Emphasis added; internal quotation marks omitted.) *Bonington* v. *Westport*, supra, 297 Conn. 308. We conclude that neither the creation of a schedule for cleaning all catch basins at least once per year, nor the practice of attempting to respond to every complaint about malfunctioning storm drains, constitutes a "policy or rule" converting the discretionary duty to carry out the functions mandated by § 16-32 of the Naugatuck Code of Ordinances into a clear ministerial duty. If we were to conclude otherwise, virtually *any* attempt by a municipal agency to ensure that its discretionary duties are regularly and properly carried out would convert its discretionary duty into a ministerial duty, thereby creating a disincentive for municipal agencies to make such attempts and undermining the very policy considerations that the doctrine governmental immunity was intended to advance. See *Violano* v. *Fernandez*, supra, 280 Conn. 319 ("[d]iscretionary act immunity reflects a value judgment that—despite injury

to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury" [internal quotation marks omitted]).

For similar reasons, we reject the plaintiffs' claim that the defendants violated a ministerial duty when they completely failed to perform *any* maintenance or repair of some storm drains and catch basins. In support of this claim, the plaintiffs rely on this court's decision in *Evon* v. *Andrews*, supra, 211 Conn. 506, in which we noted that the plaintiffs had not alleged that "the defendants failed to inspect the dwelling" but that they had "failed to make *reasonable and proper inspections* . . . ." (Emphasis in original; internal quotation marks omitted.) The plaintiffs contend that this implies that municipalities have no discretion to completely *fail* to perform a mandatory duty, even if the manner of carrying out the duty is discretionary. We disagree. First, the plaintiffs have cited no evidence that would support a finding that there are town storm drains and catch basins that the defendants have *never* maintained or repaired, and the frequency of maintenance and repair is discretionary. See *Grignano* v. *Milford*, supra, 106 Conn. App. 656 ("[a] municipality necessarily makes discretionary policy decisions with respect to the timing, *frequency*, method and extent of inspections, maintenance and repairs" [emphasis added]). Second, even if we were to assume that the defendants never maintained or repaired certain storm drains and catch basins, we cannot conclude that, in a system as large and complex as a municipal storm drainage system, the duty to maintain and repair the system encompasses a judicially enforceable duty to maintain and repair each individual component of the system, regardless of the needs of the system as a whole. It is not the function of this court to second-guess the administration of such complex municipal affairs, particularly when "there is no readily ascertainable standard by which the action of the government servant may be measured . . . ."[22] (Internal quotation marks omitted.) *Violano* v. *Fernandez*, supra, 280 Conn. 319 n.7.

For the foregoing reasons, we conclude that the defendants' duty to maintain and repair the town's storm drains and sewers was discretionary and that the Appellate Court properly upheld the trial court's granting of the defendant's motion for summary judgment on the ground of governmental immunity.

The judgment of the Appellate Court is affirmed.

In this opinion PALMER, McDONALD, D'AURIA and KAHN, Js., concurred.

[1] For the sake of simplicity, we refer to the plaintiffs individually by first name when necessary. We also note that the present action was brought

on Timothy's behalf by Helen, his mother, as next friend.

[2] The following officials were named as defendants: (1) Robert A. Mezzo, the town's mayor; (2) Henry J. Witkowski, Jr., who served as the town's superintendent of streets; and (3) James Stewart, who served as town engineer until 2009, when he was appointed director of the town's newly formed public works department, which replaced the streets commission.

[3] We granted the plaintiffs' petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the maintenance and repair of storm water systems is a discretionary duty, in light of this state's precedents, including *Spitzer* v. *Waterbury*, [supra, 113 Conn. 84], and *Silberstein* v. *54 Hillcrest Park Associates, LLC*, 135 Conn. App. 262, 41 A.3d 1147 (2012)?" *Northrup* v. *Witkowski*, 327 Conn. 971, 173 A.3d 392 (2017).

[4] "In their complaint, the plaintiffs define 'black water' as surface rainwater that overwhelms and causes a [backup] in the sanitary sewer system, resulting in flood waters that contain sewage and other contaminants." *Northrup* v. *Witkowski*, supra, 175 Conn. App. 226 n.4.

[5] On appeal to the Appellate Court, the plaintiffs contended that the trial court improperly (1) determined that the governmental acts complained of were discretionary in nature rather than ministerial, (2) concluded that the identifiable person-imminent harm exception to governmental immunity did not apply, and (3) raised sua sponte the issue of whether the plaintiffs' allegations of recklessness directed against the individual defendants could be maintained against them and ultimately concluded that the claims were barred by government immunity. *Northrup* v. *Witkowski*, supra, 175 Conn. App. 225–26, 245–46. The Appellate Court rejected all of these claims. Id., 250. The Appellate Court's rulings on the second and third claims are not at issue in this certified appeal. See footnote 3 of this opinion.

[6] After the plaintiffs filed this certified appeal, we granted permission to the cities of Bridgeport, Danbury, Hartford, New Haven, Stamford and Waterbury to file a joint brief as amicus curiae in support of the defendants' position.

[7] See, e.g., *Grignano* v. *Milford*, supra, 106 Conn. App. 657–60 (municipal ordinance requiring owner of structure within harbor or marine facility that has been found to be dangerous to post proper notice, to construct barricade, and to adequately illuminate area until repairs are made created ministerial duty); see also *Wright* v. *Brown*, 167 Conn. 464, 471–72, 356 A.2d 176 (1975) (statute requiring town dog warden to quarantine dog for fourteen days after dog bit person created ministerial duty); *Pluhowsky* v. *New Haven*, 151 Conn. 337, 347, 197 A.2d 645 (1964) (town clerk has ministerial duty to record instrument that has been accepted for recordation in land records); *Leger* v. *Kelley*, 142 Conn. 585, 589, 116 A.2d 429 (1955) (statute prohibiting commissioner of motor vehicles from registering any motor vehicle that was not equipped with safety glass created ministerial duty).

[8] The plaintiffs do not identify the specific statutes that, according to them, impose this ministerial duty. We note, however, that General Statutes § 13a-99 provides: "Towns shall, within their respective limits, build and repair all necessary highways and bridges, and all highways to ferries as far as the low water mark of the waters over which the ferries pass, except when such duty belongs to some particular person. Any town, at its annual meeting, may provide for the repair of its highways for periods not exceeding five years and, if any town fails to so provide at such meeting, the selectmen may provide for such repairs for a period not exceeding one year."

[9] *Bronson* also states that municipalities may be held liable for damage caused by rainwater runoff from roadbeds "only in special cases, where wanton or unnecessary damage is done, or where [the] damage results from negligence . . . ." *Bronson* v. *Wallingford*, supra, 54 Conn. 520. The cases cited in *Bronson*, however, may be characterized as sounding in nuisance. See id. As we discuss more fully subsequently in this opinion, a municipality may be held liable for the creation of a nuisance even when the act that created the nuisance was, in the language of the older cases, governmental or, in the language of more recent cases, discretionary. Thus, *Bronson* may have conflated the notion that a municipality may be held liable for creating a nuisance while carrying out a statutory duty with the notion that a municipality may be held liable for the performance of nongovernmental acts. Suffice it to say that there are a myriad of cases in Connecticut and other jurisdictions addressing the issue of municipal liability for damages caused by the failure to maintain roads and sewers, and it is likely possible to find an isolated case to support any position. See 4 J. Dillon, Commentaries on the Law of Municipal Corporations (5th Ed. 1911) § 1740, p. 3051 ("[i]t is,

perhaps, impossible to reconcile all of the cases" on subject of municipal liability for damage caused by municipal drains and sewers).

[10] Remnants of the construct set forth in *Dyer* and *Jones* survive in the principle that a municipality may be held liable for negligent acts that are proprietary in nature, as opposed to governmental. See *Considine* v. *Waterbury*, 279 Conn. 830, 844, 905 A.2d 70 (2006) ("municipalities are liable for their negligent acts committed in their proprietary capacity"); see also General Statutes § 52-557n (a) (1) ("a political subdivision of the state shall be liable for damages to person or property caused by . . . [B] negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit"). Although "the distinction between a municipality's governmental and proprietary functions has been criticized as being illusory, elusive, arbitrary, unworkable and a quagmire"; *Considine* v. *Waterbury*, supra, 845; it is relatively clear that, under the more modern rule, not *all* duties that a municipality voluntarily assumes for the benefit of its inhabitants, as distinct from those that it performs for the benefit of the general public as the agent of the state, are proprietary or, in the language of the older cases, corporate, and, therefore, subject to liability. See id., 846 ("functions that appear to be for the sole benefit of a municipality's inhabitants, but nevertheless provide indirect benefits to the general public because the activities were meant to improve the general health, welfare or education of the municipality's inhabitants" are governmental); id., 848 ("a municipality is engaged in a proprietary function when it acts very much like private enterprise" [internal quotation marks omitted]). The plaintiffs in the present case make no claim that the maintenance and repair of a storm sewer system is proprietary in nature. Cf. *Platt Bros. & Co.* v. *Waterbury*, 72 Conn. 531, 549, 45 A. 154 (1900) ("[w]hile sewers or drains for the disposition of surface waters collecting in highways may be considered as mere adjuncts of a highway, partaking of its nature as a governmental use . . . it is different with *sewers for the disposition of refuse and filth accumulated on private property*" [citation omitted; emphasis added]); *Brusby* v. *Metropolitan District*, supra, 160 Conn. App. 653 (concluding that there was genuine issue of material fact as to whether maintenance of sanitary sewer system, of which plaintiff was paying customer, was proprietary function).

[11] New York state courts continue to accept this distinction between duties that are imposed on municipalities and those that they voluntarily assume. See *Fireman's Fund Ins. Co.* v. *Nassau*, 66 App. Div. 3d 823, 824, 887 N.Y.S.2d 242 (2009) (municipality is immune from liability for negligent design of sanitary sewer, but maintenance of sewer is ministerial function); *Biernacki* v. *Ravena*, 245 App. Div. 2d 656, 657, 664 N.Y.S.2d 682 (1997) (following *Johnston* and concluding that, while municipality is not liable for defective sanitary sewer plan, construction and repair of sewer are ministerial functions).

[12] The plaintiffs have not cited any Connecticut cases to support their position that the construction of sewers is discretionary but that their maintenance and repair are ministerial. We note that *Spitzer* itself made no such distinction, but indicated that "[t]he work of constructing drains and sewers, as well as that of keeping them in repair, is ministerial . . . ." *Spitzer* v. *Waterbury*, supra, 113 Conn. 88. *Spitzer* also stated, however, that "the duty to provide . . . drains, authorized by the defendant's charter, is governmental in its nature." Id. Because, at that time, acts in furtherance of governmental or public duties were deemed to be immune from liability, i.e., *not* ministerial; see *Gauvin* v. *New Haven*, 187 Conn. 180, 184, 445 A.2d 1 (1982) (citing *Spitzer* for proposition that "[a] municipality is immune from liability for the performance of governmental acts, as distinguished from ministerial acts"); there would appear to be an inconsistency within *Spitzer*. This apparent inconsistency may reflect the somewhat confusing state of the law governing governmental immunity at the time.

[13] General Statutes § 13a-149 provides in relevant part: "Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. . . ."

[14] Dillon's treatise also relied on the now outmoded distinction between public duties, which are imposed on municipalities, and corporate duties, which municipalities voluntarily assume. See 4 J. Dillon, supra, § 1742, p. 3057 n.1.

[15] We note that *Spitzer* cited *Judd* and *Mootry* in support of its conclusion that a municipality is "bound to exercise due care in the construction of its storm water sewers, and would be liable for its failure to do so . . . ." *Spitzer* v. *Waterbury*, supra, 113 Conn. 88.

[16] This court stated in *Elliott* v. *Waterbury*, 245 Conn. 385, 421, 715 A.2d 27 (1998), that, "in order to overcome the governmental immunity of municipal defendants where it applies, the plaintiff must prove that the defendants, by some positive act, *intentionally* created the conditions alleged to constitute a nuisance." (Emphasis added.) In support of this statement, this court cited, among other cases, *Keeney* v. *Old Saybrook*, supra, 237 Conn. 165–66, and *Hoffman* v. *Bristol*, supra, 113 Conn. 390–92. See *Elliott* v. *Waterbury*, supra, 421. In both *Keeney* and *Hoffman*, however, this court expressly recognized that a municipality may be held liable for *negligently* creating a nuisance. See *Keeney* v. *Old Saybrook*, supra, 165 (municipality may be held liable for nuisance even if its conduct "constitutes negligence from which the municipality would be immune"); *Hoffman* v. *Bristol*, supra, 389 (municipality may be held liable for nuisance "irrespective of whether the misfeasance or nonfeasance causing the nuisance also constituted negligence"); see also *Judd* v. *Hartford*, supra, 72 Conn. 353 (municipality was liable when, "after planning and constructing an adequate sewer, [the municipality] left obstructions in it, placed there for temporary purposes, which its agents *carelessly* omitted to remove after those purposes had been accomplished" [emphasis added]). It is clear, therefore, that, by using the word "intentionally," *Elliott* merely intended to emphasize that, for a municipality to be held liable for creating a nuisance, the nuisance must be the result of some positive act of the municipality, and that this court did not intend to suggest that only the intentional act of a municipality can create a nuisance. In other words, there is a difference between a *positive* act, which may be negligent, as was the act of the municipality in *Judd*, and an *intentional* act.

[17] The plaintiffs in the present case have made no claim that the defendants may be held liable for their failure to properly maintain and repair the storm sewer system under a nuisance theory because a positive act by the town caused damage to their property. Indeed, at oral argument before this court, counsel for the plaintiffs conceded that he did not believe that the facts of this case would support a nuisance claim. See *Aerotec Corp.* v. *Greenwich*, supra, 138 Conn. 120 (noting that municipal liability for nuisance "exists . . . only for those nuisances which have been created by positive act" and that "[t]here is no liability where the condition of the highway which is dangerous has come into being simply because of the failure of the town to take remedial steps"); *Karnasiewicz* v. *New Britain*, 131 Conn. 691, 694, 42 A.2d 32 (1945) (when dangerous highway condition does not constitute defect under highway defect statute and does not constitute nuisance, "a municipality is not liable where its sole fault is a failure to take remedial steps"); see also footnote 18 of this opinion.

These decisions lend support to our conclusion that the maintenance and repair of a storm drainage system are not ministerial functions. It would be odd to conclude that a city is not liable for harms caused by a dangerous condition on a highway unless the condition was created by a positive act of the municipality or constituted a defect under the highway defect statute, but the city may be held liable for harms caused by the failure to take steps to remedy a dangerous condition in a storm drainage system.

[18] We recognize that this court has held that, by enacting § 52-557n, the legislature eliminated common-law actions against municipalities arising from injuries for which § 13a-149, the highway defect statute, provides a remedy, including nuisance actions. See *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 192, 592 A.2d 912 (1991) (§ 52-557n provides that § 31a-149 "is a plaintiff's exclusive remedy against a municipality or other political subdivision 'for damages resulting from injury to any person or property by means of a defective road or bridge' "); see also General Statutes § 52-557n (a) (1) (providing that municipality may be held liable for its negligent acts and negligent acts of its employees acting within scope of official duties, for acts from which political subdivision derives corporate profit, and for creation of nuisance, "provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149"). As we have indicated herein, however, § 13a-149 does not provide a right of recovery to an abutting landowner for damage to the land caused by a defective highway. See *Aerotec Corp.* v. *Greenwich*, supra, 138 Conn. 119. Moreover, a highway need not be *defective* to constitute a nuisance to abutting landowners. See *Wright* v. *Brown*, supra, 167 Conn. 470 ("[l]iability in nuisance can be imposed on a municipality only if the condition constituting the nuisance was created by the positive act of the municipality").

[19] Section 16-32 of the Naugatuck Code of Ordinances provides: "Except

as otherwise provided in this article, the streets commission shall be responsible for the care and management of all streets, avenues, highways, alleys and bridges, and the opening, [grading, improving], repairing and cleaning of the same; of the construction, protection, repair, furnishing, cleaning, heating, lighting and general care of all public streets and appurtenances, except such as are by the express terms of the Charter under the control of some other officer or department; of the construction, repair, cleaning and general care of all drains, culverts, sluiceways and catch basins, and the collection and disposing of ashes, garbage and refuse. The streets commission shall make all suitable rules and regulations in regard to the department and the conduct of its business.''

[20] The plaintiffs raised this claim for the first time in their reply brief. They contend that they did not raise this claim in their main brief because "the question certified by this [court] was not specific to the [town's] directives, but to storm water systems in general . . . ." They point out that the defendants nevertheless addressed "the question more narrowly as it relates only to the [town]." The plaintiffs fail to recognize, however, that this court is required to reach the question of whether the defendants' own acts had created a ministerial duty only if it *rejects* their claim that a ministerial duty was created by statute and that our review of the former issue can only be to their benefit. By failing to address the issue in their main brief, the plaintiffs effectively abandoned it. See, e.g., *State* v. *Jose G.*, 290 Conn. 331, 341 n.8, 963 A.2d 42 (2009) ("[i]t is a well established principle that arguments cannot be raised for the first time in a reply brief" [internal quotation marks omitted]). Nevertheless, because the plaintiffs cannot prevail on this claim, and because the defendants have briefed it, we review it. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 157–58, 84 A.3d 840 (2014) (review of unpreserved claim may be appropriate when party who raised it cannot prevail).

[21] See also *Wisniewski* v. *Darien*, 135 Conn. App. 364, 374–75, 42 A.3d 436 (2012) (although no legal directive prescribed specific manner in which tree warden was required to perform duties, evidence that town's assistant director of public works had repeatedly provided same general direction to tree warden upon receiving complaints of unsafe trees and tree warden's testimony that he had nondiscretionary duty to perform inspection upon receipt of complaint were sufficient to establish ministerial duty); *Kolaniak* v. *Board of Education*, 28 Conn. App. 277, 281, 610 A.2d 193 (1992) (in case in which board of education had issued bulletin to all maintenance personnel directing that walkways were to be inspected and kept clean on daily basis, maintenance workers had no discretion to determine whether there was sufficient accumulation of snow before clearing walkways but had ministerial duty to clear walkways of snow and ice).

[22] The dissenting justice would conclude that, because "[o]*nly* the municipality can construct a storm water drainage system and, once constructed, *only* the municipality can maintain the system and repair it to prevent property damage foreseeably resulting from its malfunction," and "[b]ecause storm water drainage systems are municipal property and subject to exclusive municipal control," a municipality should not be permitted to invoke municipal immunity to "escape liability." (Internal quotation marks omitted.) The very *purpose* of the doctrine of governmental immunity, however, is to bar liability for harmful negligent conduct by a municipality, and it is in the very nature of harmful negligent conduct that the harm was within the power of the tortfeasor to prevent. Thus, to create an exception to the doctrine in cases in which the dangerous condition was within the municipality's control and the municipality could have prevented the harm would eviscerate the doctrine, and would entirely disregard the underlying "value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury." (Internal quotation marks omitted.) *Violano* v. *Fernandez*, supra, 280 Conn. 319.