## RICKI LETOWT *v.* CITY OF NORWALK

SUPERIOR COURT          JUDICIAL DISTRICT OF          No. 77813S
                    STAMFORD-NORWALK AT STAMFORD

Memorandum filed November 8, 1989

*Lepofsky, Lepofsky & Lang,* for the plaintiff.

*Corporation counsel of the city of Norwalk,* for the defendant.

LEWIS, J. The plaintiff, Ricki Letowt, has sued the defendant city of Norwalk claiming that, while standing beside her automobile, which had just been involved in an accident, she was struck by a police vehicle responding to the accident call and was pinned between her automobile and the patrol car. The plaintiff alleges that her injuries were caused by the negligence of Laura Blakely, the police officer who responded to the scene, in that, Blakely operated her vehicle too fast, had defective tires, failed to apply her brakes properly, failed to keep a proper lookout, failed to sound a warning and failed to turn her vehicle so as to avoid the collision.

The defendant has moved for summary judgment claiming that the operation of a police department is a governmental function, and that the defendant is, therefore, immune from liability. Both parties agree that no specific authority concerning this issue exists in Connecticut. The defendant, however, points to *Warren* v. *Bridgeport,* 129 Conn. 355, 358, 28 A.2d 1 (1942), where the automobile in which the plaintiff was

a passenger collided with a streetsweeper operated by one of the city's employees. The Supreme Court held that "the trial court expressly and rightly removed the count on negligence from the consideration of the jury on the ground of governmental immunity." Id.

The starting point for analysis is the proposition that a municipality is entitled to governmental immunity in the performance of its governmental functions. *Ryszkiewicz* v. *New Britain,* 193 Conn. 589, 593, 479 A.2d 793 (1984). There are several exceptions to the general rule, none of which, in the opinion of this court, applies in the present case. One exception is where a statute specifically abolishes governmental immunity. For example, General Statutes § 52-557, which pertains to liability for injuries to children being transported to school. Another exception exists where the municipality is performing proprietary rather than governmental duties. *Couture* v. *Board of Education,* 6 Conn. App. 309, 312, 505 A.2d 432 (1986). There is also an exception if the municipality owes a private duty to an individual. *Gordon* v. *Bridgeport Housing Authority,* 208 Conn. 161, 180, 544 A.2d 1185 (1988).

The only other exception to governmental immunity is embodied in General Statutes § 52-557n (a) (2) (B), which provides that a municipality is liable for the negligence of its employees while acting within the scope of their employment unless the acts require the exercise of judgment or discretion.

The courts have defined the term "ministerial" as referring to " ' "a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. " ' " *Evon* v. *Andrews,* 211 Conn. 501, 505, 559 A.2d 1131 (1989). The specific issue, therefore, is whether negligence in the driving of a police vehicle should properly be characterized as discretionary or ministerial.

The decision whether the acts of municipal employees were ministerial or discretionary in nature had been regarded as an issue to be decided by the trier of fact. *Gauvin* v. *New Haven,* 187 Conn. 180, 186, 445 A.2d 1 (1982). In *Evon* v. *Andrews,* supra, 507, however, the court decided as a matter of law that inspecting rental dwellings and enforcing laws pertaining to their maintenance should be characterized as discretionary acts. Assuming, therefore, that this issue is one of law, the court notes that although no case in Connecticut is squarely on this point, other states and commentators have made various attempts to distinguish between discretionary and ministerial acts despite the fact that the Oklahoma Supreme Court in *Vanderpool* v. *State,* 672 P.2d 1153, 1154–55 (Okl.1983), stated that "[j]udicial attempts to grapple with what has become a multi-addered medusa has resulted in confusion and uncertainty all too painfully apparent to legal scholars, and an inability on the part of the courts to evolve any definite guidelines . . . ."

The approach used by the Supreme Court of Florida in *Commercial Carrier Corporation* v. *Indian River County,* 371 So. 2d 1010, 1022 (Fla.1979), distinguishes between planning level decisions, which are immune from suit, and operational type decisions, which are not immune. Planning level functions are described as those involving basic policy decisions, whereas operational level functions are those that implement the policy. Id., 1021. The Florida court further stated that this distinction had to be pursued on a case-by-case method, but it adopted, as useful tools for analysis, the criteria used by the Supreme Court of Washington in *Evangelical United Brethren Church of Adna* v. *State,* 67 Wash. 2d 246, 255, 407 P.2d 440 (1965). That court stated that the following questions should be posed: "(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?

(2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision? If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom. If, however, one or more of the questions call for or suggest a negative answer, then further inquiry may well become necessary, depending upon the facts and circumstances involved.''

Another approach is discussed in W. Prosser & W. Keeton, Law of Torts (5th Ed. 1984) § 132,. p. 1062, which states that one should assess ''the nature of the plaintiff's injury, the availability of alternative remedies, the ability of the courts to judge fault without unduly invading the executive's function, and the importance of protecting particular kinds of official acts.''

The preferred approach or analysis, however, is the one used very recently by the Supreme Court of Rhode Island in *Catone* v. *Medberry,* 555 A.2d 328, 334 (R.I. 1989). After analyzing decisions in other states, as well as interpretations of the Federal Tort Claims Act, the Rhode Island court offered as the most practical guideline the distinction between activities that only a municipal employee may perform, as contrasted with those activities that any citizen may perform: ''We therefore

hold that when the government or its agent engages in an activity normally undertaken by private individuals in the course of their everyday lives, a duty arises under the common law to exercise reasonable care in the performance of this task. Governmental employees, like ordinary citizens, must operate their vehicles in a reasonably safe manner and avoid creating foreseeably unreasonable risks of harm to the motoring public.''

This distinction would mean that Blakely's activities at the accident scene would be discretionary in nature and hence the municipality would not be liable for her negligence. For example, if she decided not to transport an injured person to the hospital or decided to measure skid marks, or engaged in any of the myriad activities that only a police officer would perform at the scene of an accident, she would be performing discretionary activities. Driving to the scene of an accident, however, is different. Ordinary citizens drive their cars every day, not just police officers, and hence the operation of a motor vehicle would be deemed ministerial.

It should be said in conclusion that even if any of the other tests, such as the planning versus operational level analysis, the various questions posed by the Washington Supreme Court, or the Prosser and Keeton criteria are employed, this court would still conclude that the activities of the police officer in driving her car to the scene of an accident represented the performance of ministerial acts. It follows, therefore, that the defendant's motion for summary judgment must be denied because, under General Statutes § 52-557n (a) (1) (A), municipalities are liable for the negligent performance of ministerial acts by their employees within the scope of their employment.