******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DEVONTE DALEY *v.* ZACHARY
KASHMANIAN ET AL.
(AC 41393)

Keller, Bright and Harper, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant police detective, K, and the defendant city of Hartford for personal injuries he sustained when he was ejected from his motorcycle after it was struck by K's unmarked vehicle, which was not equipped with flashing or revolving lights or a siren, while K was surveilling the plaintiff and traveling above the speed limit in the wrong lane of traffic. The plaintiff sought to recover damages on the basis of K's alleged reckless and negligent conduct, claiming that K's conduct violated a ministerial duty imposed on him by certain motor vehicle statutes. After the case was tried to a jury, the trial court granted K's motion for a directed verdict on the plaintiff's recklessness claim. The jury thereafter returned a verdict in favor of the plaintiff on his negligence claim. Subsequently, the trial court set aside the verdict on the negligence count, concluding that the plaintiff's allegations related to discretionary acts for which the defendants were immune from liability pursuant to the statute (§ 52-557n) concerning governmental immunity. From the judgment rendered thereon, the plaintiff appealed to this court. *Held*:

1. The trial court improperly directed a verdict in favor of K as to the plaintiff's recklessness claim, as the evidence, viewed in a light most favorably to the plaintiff, was sufficient for the jury reasonably to conclude that K acted recklessly: on the basis of the evidence presented, the jury reasonably could have concluded that K consciously disregarded state laws relating to speed limits, reckless driving, following too closely and traveling in the correct lane of traffic in a situation in which a high degree of danger was present, and that he was aware of the risks and dangers his conduct imposed on others, yet showed little regard for the consequences of his actions; accordingly, the plaintiff was entitled to have his recklessness claim submitted to the jury.

2. The trial court properly set aside the verdict in favor of the plaintiff on his negligence claim; the circumstances surrounding K's conduct demonstrated that he was engaged in discretionary activity, as he was engaged in the discretionary police activity of surveilling the plaintiff and, thus, did not have a ministerial duty to follow every motor vehicle statute, even if those statutes in other circumstances would impose ministerial duties, and in the absence of a directive that clearly compelled K's conduct, he was entitled to governmental immunity for his discretionary acts.

Argued May 13—officially released October 1, 2019

*Procedural History*

Action to recover damages for the alleged negligence and recklessness of the named defendant et al., and for other relief, brought in the Superior Court in the judicial district of Hartford and tried to the jury before *Scholl, J.*; thereafter, the court granted the named defendant's motion for a directed verdict on the plaintiff's recklessness claim; verdict for the plaintiff on his negligence claim; subsequently, the court set aside the verdict and rendered judgment for the defendants, from which the plaintiff appealed to this court. *Reversed in part; new trial.*

*Martin McQuillan*, for the appellant (plaintiff).

*William J. Melley*, for the appellee (named

defendant).

*Nathalie Feola-Guerrieri,* for the appellee (defendant city of Hartford).

*James J. Healy* and *Karen K. Clark* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

BRIGHT, J. This appeal stems from a personal injury action brought by the plaintiff, Devonte Daley, against the defendants, Zachary Kashmanian and the city of Hartford (city), seeking damages for the injuries he sustained when Kashmanian, a detective with the Hartford Police Department who had been surveilling the plaintiff in an unmarked police car, allegedly, negligently and recklessly caused the plaintiff to be ejected from his motorcycle. The plaintiff appeals, following a jury trial, from the judgment of the trial court directing a verdict in favor of Kashmanian on the plaintiff's recklessness claim, and from the judgment of the trial court setting aside the jury's verdict on the plaintiff's negligence claim. On appeal, the plaintiff claims that the court improperly (1) directed a verdict because there was sufficient evidence for the jury to find that Kashmanian engaged in reckless conduct, and (2) set aside the verdict with respect to the negligence claim on the ground that the defendants were entitled to governmental immunity because Kashmanian was engaged in ministerial, not discretionary, conduct. We agree with the plaintiff's first claim only, and, accordingly, we reverse the judgment of the trial court directing a verdict on the recklessness claim and affirm the judgment of the trial court setting aside the verdict on the negligence claim.

The relevant facts, viewed in a light most favorable to the plaintiff, and procedural history, are as follows. On June 1, 2013, at approximately 12 a.m., the plaintiff was riding his yellow Suzuki motorcycle on Asylum Avenue in Hartford with a group of eight to ten other people who were riding "dirt bikes" and "quads." The plaintiff's motorcycle was neither "street legal" nor "roadworthy" because it did not have headlights and was equipped with off-road tires: a black tire on the front and a yellow tire on the back. Also at that time, Kashmanian was operating an unmarked gray Acura TL, which the police characterize as a "soft car." A soft car is a vehicle that is not equipped with flashing or revolving lights, sirens, or police markings so that it is indiscernible from ordinary civilian cars.

At or around that same time, a confidential informant provided an anonymous tip to the police that a man riding a yellow motorcycle with a yellow tire had a gun. Kashmanian was instructed by other officers to perform surveillance[1] on the group of motorcycles and quads, including the yellow motorcycle, which was operated by the plaintiff. When Kashmanian arrived at Asylum Avenue, he observed the yellow motorcycle and the group of motorcycles and quads, and proceeded to follow them westbound on Asylum Avenue. All of the motorcycles and quads then turned right and proceeded northbound on Sumner Street, which is a two lane road with a speed limit of twenty-five miles per hour. At

the intersection of Asylum and Sumner, Kashmanian's vehicle "sideswip[ed]" another motor vehicle driven by Brontain Stringer, which had been proceeding in the same direction. Kashmanian paused for a brief second, but he was directed by the police on the radio to "just keep going" and that they would "take care of the accident; just keep going."

Kashmanian then proceeded north in the northbound lane of Sumner Street, to continue to surveil the plaintiff. Kashmanian was traveling between forty and fifty miles per hour, well over the twenty-five miles per hour speed limit. Kashmanian then crossed the center line to travel north in the southbound lane in an effort to avoid two quads in the group that fishtailed and sideswiped his vehicle. Although he could have returned to the northbound lane of traffic after passing the two quads, Kashmanian continued to travel north in the southbound lane, closing the distance between his car and the plaintiff's motorcycle until he struck the back tire of the plaintiff's motorcycle with the front left panel of his vehicle, which caused the plaintiff to crash his motorcycle into a parked car in the southbound lane of Sumner Street. The plaintiff was ejected from his motorcycle and landed approximately ninety-five feet down Sumner Street, causing him significant injuries. As evinced by the lack of skid marks on Sumner Street, Kashmanian neither suddenly slowed his vehicle nor applied his brakes before striking the plaintiff's motorcycle.

On February 26, 2015, the plaintiff filed this personal injury action against the defendants. The plaintiff's operative fifth amended complaint contains two relevant counts.[2] In count one, the plaintiff asserted a common-law negligence claim against Kashmanian in his official capacity and the city, alleging that Kashmanian negligently caused the plaintiff's injuries. In count two, the plaintiff asserted a common-law recklessness claim against Kashmanian, alleging that he recklessly, wilfully, and wantonly caused the plaintiff's injuries.

In response, the defendants filed answers denying the essential allegations of the plaintiff's complaint and alleging two relevant special defenses. The defendants alleged that the plaintiff's injuries were caused by his own comparative negligence, and that the plaintiff's claims are barred by common-law and statutory governmental immunity, pursuant to General Statutes § 52-557n,[3] because Kashmanian was engaged in discretionary acts.[4] Prior to the submission of the case to the jury, the parties stipulated that the issue of whether the defendants were entitled to governmental immunity would be decided by the court if the jury returned a verdict in favor of the plaintiff on his negligence claim.

The case was tried to a jury over the course of five days. At the close of evidence, Kashmanian made an oral motion for a directed verdict as to count two, the

common-law recklessness count. In particular, Kashmanian argued that count two should not be submitted to the jury because there was no evidence that Kashmanian engaged in reckless conduct. After hearing the plaintiff's counterargument, the court orally granted Kashmanian's motion for a directed verdict as to count two. Accordingly, the jury was charged and the case was submitted to the jury only as to count one, the negligence count, and the defendants' comparative negligence special defense. On that same day, the jury returned a verdict for the plaintiff in the total amount of $416,214, reduced on the basis of the jury's finding that the plaintiff comparatively was 25 percent negligent, for a net award of $312,160.50.

The court then scheduled oral argument for January 23, 2018, and ordered the parties to file memoranda of law on the reserved issue of governmental immunity. On December 19 and 22, 2017, the city and Kashmanian, respectively, each filed a memorandum of law in which they argued, inter alia, that the jury's verdict in favor of the plaintiff on his negligence claim should be set aside because it was barred by the doctrine of governmental immunity.[5] On January 12, 2018, the plaintiff filed a memorandum of law in opposition on the ground that the defendants are not entitled to governmental immunity.

On February 8, 2018, the court set aside the jury's verdict in favor of the plaintiff on count one, the negligence claim. In particular, the court concluded that governmental immunity was applicable to Kashmanian's conduct because his driving surveillance involved discretionary police activity, which is protected under § 52-557n (a) (2) (B). Because of its determination on governmental immunity, the court also reasoned that no cognizable claim existed against the city for indemnification under § 7-465. See footnotes 2 and 5 of this opinion. The court then rendered judgment in favor of the defendants on counts one and four of the plaintiff's complaint. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court improperly directed a verdict in favor of Kashmanian on his claim of recklessness. We agree.

"We begin our analysis with the standard of review of a trial court's decision to grant a motion for a directed verdict. Whether the evidence presented by the plaintiff was sufficient to withstand a motion for a directed verdict is a question of law, over which our review is plenary. . . . Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision to direct a verdict in favor of a defendant we must

consider the evidence in the light most favorable to the plaintiff. . . . Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party. . . . [Our Supreme Court] has emphasized two additional points with respect to motions to set aside a verdict that are equally applicable to motions for a directed verdict: First, the plaintiff in a civil matter is not required to prove his case beyond a reasonable doubt; a mere preponderance of the evidence is sufficient. Second, the well established standards compelling great deference to the historical function of the jury find their roots in the constitutional right to a trial by jury." (Citations omitted; internal quotation marks omitted.) *Curran* v. *Kroll*, 303 Conn. 845, 855–56, 37 A.3d 700 (2012).

Next, we turn to our standard for recklessness, which is well established. "Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent. . . . More recently, we have described recklessness as a state of consciousness with reference to the consequences of one's acts. . . . It is more than negligence, more than gross negligence. . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . Wanton misconduct is reckless misconduct . . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . .

"While we have attempted to draw definitional distinctions between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing. The result is that willful, wanton, or reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Citations omitted; internal quotation marks omitted) *Matthiessen* v. *Vanech*, 266 Conn. 822, 832–33, 836 A.2d 394 (2003); see *Williams* v. *Housing Authority*, 327 Conn. 338, 380, 174 A.3d 137 (2017) (same).

The plaintiff claims on appeal that the court erred in granting Kashmanian's motion for a directed verdict because there was sufficient evidence for the jury to

find that Kashmanian's conduct that caused the plaintiff's injuries was wilful, wanton, or reckless. Specifically, the plaintiff cites Kashmanian's numerous traffic violations, the fact that Kashmanian did not stop or change course even though he was aware of the plaintiff's motorcycle slightly in front of him, and his accident with Stringer as evidence of highly unreasonable conduct rising to the level of recklessness. Conversely, Kashmanian contends that, because he was conducting surveillance in the scope of his police duties and in response to direct orders from his supervisor, his conduct lacked the requisite conscious disregard for the safety of others. Kashmanian argues that his conduct was the opposite of reckless because it was done to preserve the safety of others. We do not agree with Kashmanian's argument. We agree with the plaintiff that, viewing the evidence in a light most favorable to him, there was sufficient evidence for the jury reasonably to conclude that Kashmanian's conduct was reckless.

At trial, Kashmanian testified that the purpose of surveillance is to monitor covertly the conduct of the subject *at a distance*. Nevertheless, the evidence, viewed in a light most favorable to the plaintiff, demonstrated that Kashmanian drove down Sumner Street, in the dark, in a soft car, and at approximately double the speed limit in order to stay close to the plaintiff. He did so immediately after colliding with Stringer's vehicle on Asylum Avenue, and driving away to continue his surveillance. Kashmanian maintained his same rate of speed while *knowingly* driving northbound in the southbound lane, even though he could have returned to the correct lane. In fact, the jury reasonably could have concluded that Kashmanian, following his collision with Stringer, must have increased his speed in order to catch up to the plaintiff. Kashmanian ultimately got so close to the plaintiff, while in the wrong lane of traffic, that he struck the plaintiff's motorcycle at such a speed and with enough force to drive it into a parked vehicle, which propelled the plaintiff ninety-five feet. As a result of Kashmanian's driving on Asylum Avenue and Sumner Street, there were at least three vehicles that sustained significant damage and one person, the plaintiff, who sustained significant physical injuries.

On the basis of this evidence, the jury reasonably could have concluded that Kashmanian consciously disregarded Connecticut's laws relating to speed limits, reckless driving, following too closely, and travelling in the correct lane of traffic, in a situation in which a high degree of danger was apparent. See General Statutes §§ 14-218a, 14-222, 14-230 and 14-240a. The jury reasonably could have concluded that Kashmanian was aware of the dangers and risks he was imposing on others, including the plaintiff, and yet showed little regard for the consequences of his actions. Although Kashmanian's supervisor instructed him to surveil the

plaintiff and to continue that surveillance after his accident with Stringer, those instructions did not give Kashmanian license to engage in wilful, wanton, or reckless conduct. See, e.g., *O'Connor* v. *City of New York*, 280 A.D.2d 309, 719 N.Y.S.2d 656 (2001) (findings that officer drove unmarked vehicle without turret light or siren, at high rate of speed against flow of traffic on one-way street, and entered intersection without warning or slowing down were sufficient to support reckless claim); *Adams* v. *Peoples*, 18 Ohio St.3d 140, 480 N.E.2d 428 (1985) (allegations that officer drove his vehicle at excessive speed, "had gone left of the center line to enter the intersection on a red traffic light," under wet road conditions, were sufficient to support willful and wanton claim). Similarly, Kashmanian's argument that he was attempting to stop the entire group of riders who posed a threat to the residents of the city does not justify engaging in reckless conduct.[6] *Jackson* v. *Lipsey*, 834 So. 2d 687, 690 (Miss. 2003) (findings that officer, in attempt to apprehend suspects, suddenly turned into traffic without headlights, blue lights, or siren were sufficient to support reckless claim). Ultimately, because the evidence, viewed in a light most favorable to the plaintiff, was sufficient for the jury reasonably to conclude that Kashmanian acted recklessly, the plaintiff was entitled to have his claim submitted to the jury. Therefore, we conclude that the court erred in granting Kashmanian's motion for a directed verdict as to count two.

II

The plaintiff next claims that the court improperly set aside the verdict on his negligence claim on the ground that the defendants are entitled to governmental immunity. We disagree.

We begin with the standard of review and legal principles relevant to our resolution of this claim. Although generally a court's decision to set aside a jury verdict is subject to an abuse of discretion review; *Rawls* v. *Progressive Northern Ins. Co.*, 310 Conn. 768, 776, 83 A.3d 576 (2014); we afford plenary review to the present claim because, as the parties properly recognize, the ultimate determination as to whether the defendants are entitled to governmental immunity is a question of law. *Ventura* v. *East Haven*, 330 Conn. 613, 634–37, 199 A.3d 1 (2019).

The law pertaining to municipal immunity is well settled. "[Section] 52-557n abandons the common-law principle of municipal sovereign immunity and establishes the circumstances in which a municipality may be liable for damages. . . . One such circumstance is a negligent act or omission of a municipal officer acting within the scope of his or her employment or official duties. . . . [Section] 52-557n (a) (2) (B), however, explicitly shields a municipality from liability for damages to person or property caused by the negligent acts

or omissions [that] require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." (Footnote omitted; internal quotation marks omitted.) *Brooks* v. *Powers*, 328 Conn. 256, 264–65, 178 A.3d 366 (2018).

"Municipal officials are immune from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . [D]iscretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officials and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion." (Citations omitted; internal quotation marks omitted.) *Ventura* v. *East Haven*, supra, 330 Conn. 630.

"For purposes of determining whether a duty is discretionary or ministerial, [our Supreme Court] has recognized that [t]here is a difference between laws that impose general duties on officials and those that mandate a particular response to specific conditions. . . . A ministerial act is one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment [or discretion] upon the propriety of the act being done. . . . In contrast, when an official has a general duty to perform a certain act, but there is no city charter provision, ordinance, regulation, rule, policy, or any other directive [requiring the government official to act in a] prescribed manner, the duty is deemed discretionary." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Northrup* v. *Witkowski*, 332 Conn. 158, 169–70, 210 A.3d 29 (2019).

"[I]t is firmly established that the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality. . . . Indeed, [our Supreme Court] has long recognized that it is not in the public's interest to [allow] a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a policeman's discretionary professional duty. Such discretion is no discretion at all. . . . Thus, as a general rule, [p]olice officers are protected by discretionary act immunity when they perform the typical functions of a police officer. . . .

"In accordance with these principles, our courts consistently have held that to demonstrate the existence

of a ministerial duty on the part of a municipality and its agents, a plaintiff ordinarily must point to some statute, city charter provision, ordinance, regulation, rule, policy, or other directive that, by its clear language, compels a municipal employee to act in a prescribed manner, without the exercise of judgment or discretion." (Citations omitted; internal quotation marks omitted.) *Ventura* v. *East Haven*, supra, 330 Conn. 630–31.

Neither our Supreme Court nor this court has determined whether a municipal police officer conducting surveillance while driving a motor vehicle is engaged in discretionary or ministerial conduct. The plaintiff, relying on a number of Superior Court and out-of-state cases,[7] argues that Kashmanian's surveillance, while operating a motor vehicle, was ministerial. Conversely, the defendants argue that Kashmanian's surveillance, while driving, was discretionary because it entailed the use of judgment. We conclude that, on the basis of the facts of the present case, the defendants are entitled to governmental immunity as to the plaintiff's negligence claim because Kashmanian was engaged in discretionary conduct.

In the present case, the plaintiff, concededly, has not pointed us to any directive that prescribes the manner in which police officers are required to conduct surveillance. The plaintiff relies, instead, on Kashmanian's testimony as to his subjective understanding that surveillance meant "you're following someone at a distance, trying to keep an eye on them, where they're going; what their actions are. It could be in a car; it can be walking. It could be anywhere. It could be through a camera." We reject the plaintiff's position because Kashmanian's understanding of desired conduct does not clearly establish a ministerial duty. See, e.g., *Strycharz* v. *Cady*, 323 Conn. 548, 566–67, 148 A.3d 1011 (2016) (testimony that did not identify specific directive but merely established manner in which individual official performed his official duties was insufficient to establish existence of ministerial duty); *Northrup* v. *Witkowski*, 175 Conn. App. 223, 236 n.5, 167 A.3d 443 (2017) (explaining that "vague" testimony that "does not come close to an admission that the town had a nondiscretionary duty" is insufficient to establish ministerial duty in absence of written directive), aff'd, 332 Conn. 158, 210 A.3d 29 (2019).

Further, even in instances in which an officer has been provided with a written directive, courts across the country have held that officer surveillance is a discretionary function. See, e.g., *Estate of Salazar* v. *United States*, United States District Court, Docket No. LA-CV-11-10279 JAK (SPx) (C.D. Cal. May 20, 2014) (examining United States Marshall Policy Directives, which "suggest, but do not require, particular conduct," to determine that surveillance is discretionary); *Davis* v. *United States*, United States District Court, Docket

No. 7:10CV00005 (GEC) (W.D. Va. July 12, 2010) (examining United States Code and prison regulations to determine that surveillance of inmates is discretionary); *Flax* v. *United States*, 847 F. Supp. 1183, 1188–89 (D.N.J. 1994) (examining police guidelines to determine that surveillance is discretionary). These decisions are consistent with the general rule in Connecticut that "[p]olice officers are protected by discretionary act immunity when they perform the typical functions of a police officer." (Internal quotation marks omitted.) *Ventura* v. *East Haven*, supra, 330 Conn. 630. Kashmanian's surveillance, performed in the course of his employment as a police officer, necessarily required him to exercise his judgment, under the circumstances; for example, as to how fast to travel, the distance to maintain between his car and the plaintiff, and whether to change lanes.

The plaintiff also argues that, because there is no statutory exception applicable, Kashmanian had a ministerial duty to comply with the motor vehicle statutes. In particular, the plaintiff argues, and the defendants do not dispute, that Kashmanian was not exempt from certain motor vehicle statutes pursuant to General Statutes § 14-283 (providing that police officers responding to "emergency call[s]" while "making use of an audible warning signal device" are exempt from certain motor vehicle statutes in some circumstances) because he was operating a soft car with no lights or sirens. According to the plaintiff, because the legislature has identified specific circumstances in § 14-283 in which police may disregard certain motor vehicle statutes, that necessarily means that absent those circumstances, police have a ministerial duty to obey all traffic laws. We disagree.

Section 14-283 addresses only two situations: responses to emergency calls and pursuit of fleeing law violators. It does not purport to set a standard of conduct for other police endeavors, including surveillance.[8] Furthermore, the plaintiff's argument would make effective police surveillance impossible in many instances. For example, if an officer is instructed to maintain surveillance of another vehicle and the operator of that vehicle decides to exceed the posted speed limit, the officer would be unable to maintain surveillance without driving contrary to the mandate of General Statutes § 14-219 (prohibiting speeding). Similarly, maintaining surveillance of a particular suspected criminal may require an officer engaged in such surveillance while driving his vehicle to drive though a stop sign or red traffic light, make a right turn on red without stopping, or even drive the wrong way down a one-way street. Deciding whether the need to maintain surveillance of the person or vehicle being surveilled outweighs the risk to public safety caused by the violation of a motor vehicle statute requires the sound judgment of the police officer, and, is, therefore, inherently discretionary.

Having said this, we decline to hold that, *under all circumstances*, a municipal police officer operating a motor vehicle is engaged in discretionary conduct, thereby immunizing the officer and municipality from damages arising from all violations of motor vehicle statutes. Although it may be true that some motor vehicle statutes implicitly require drivers to exercise some degree of judgment when operating a motor vehicle, some statutes do not. Furthermore, although some circumstances may permit an officer, in the exercise of discretion, to violate a motor vehicle statute, that is not always the case. Affording governmental immunity in *every* instance where an officer violates a motor vehicle statute is far too expansive a rule. For example, a police officer who fails to stop at a stop sign because he is distracted by a personal phone call and, as a result, causes an accident can hardly be said to be engaging in discretionary conduct. In such a circumstance, the officer likely has a ministerial duty to obey the law and stop at the stop sign. Ultimately, the determination of whether a police officer who violates a motor vehicle statute is engaged in ministerial or discretionary conduct must be made in view of the language of the statute at issue and the circumstances presented. See *Ventura* v. *East Haven*, supra, 330 Conn. 636–37 n.11 (issue of governmental immunity, in some cases, is contingent on factual circumstances).[9]

In the present case, the circumstances surrounding Kashmanian's conduct demonstrate that he was engaged in discretionary activity. Kashmanian was not merely operating his motor vehicle on the roads under ordinary conditions; instead, he was engaged in the discretionary police activity of surveilling the plaintiff. In exercising such discretion in the present case, Kashmanian did not have a ministerial duty to follow each and every motor vehicle statute, even if those statutes in other circumstances would impose ministerial duties. Under these circumstances, Kashmanian's discretion as to the manner in which to conduct his surveillance extends to whether to violate the motor vehicle statutes. A review on appeal of Kashmanian's actions in the performance of his police duties would violate the proscription of second-guessing the decisions made pursuant to his professional duty. See *Ventura* v. *East Haven*, supra, 330 Conn. 630–31. Therefore, in the absence of a directive that clearly compelled Kashmanian's conduct and considering the circumstances of his conduct, we conclude that the defendants are entitled to governmental immunity and, thus, the court properly set aside the jury's verdict in favor of the plaintiff on his negligence claim.

The judgment setting aside the jury's verdict on the negligence count is affirmed; the judgment directing a verdict in favor of Kashmanian on the common-law recklessness count is reversed and the case is remanded

for a new trial as to that count.

[1] Kashmanian testified that his understanding of surveillance is "you're following someone at a distance, trying to keep an eye on them, where they're going; what their actions are. It could be in a car; it can be walking. It could be anywhere. It could be through a camera."

[2] The complaint contains two additional counts that are not relevant to our resolution of this appeal. In count three, the plaintiff alleged a statutory recklessness claim pursuant to General Statutes § 14-295 against Kashmanian in his individual capacity. The plaintiff withdrew this count at the conclusion of the presentation of evidence at trial. In count four, the plaintiff alleged an indemnification claim against the city pursuant to General Statutes § 7-465 (providing indemnification by municipalities of municipal officers, agents or employees who incur liability for negligent official conduct). Count four was not submitted to the jury because resolution of that claim was dependent on the court's analysis of the defendants' governmental immunity special defense. Specifically, in the absence of a common-law negligence claim against Kashmanian, there would be no basis for a statutory indemnification claim against the city pursuant to § 7-465. See *Wu* v. *Fairfield*, 204 Conn. 435, 438, 528 A.2d 364 (1987) ("in a suit under § 7-465, any municipal liability which may attach is predicated on prior findings of individual negligence on the part of the employee and the municipality's employment relationship with that individual").

[3] General Statutes § 52-557n (a) provides in relevant part: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

[4] The defendants pleaded governmental immunity as a special defense generally to all of the plaintiff's claims, yet Kashmanian does not argue that governmental immunity would apply to his alleged wilful, wanton, or reckless conduct.

[5] In its December 19, 2017 memorandum of law, the city also moved for a directed verdict as to count four of the plaintiff's complaint, the § 7-465 indemnification claim against it. See footnote 2 of this opinion. In his December 22, 2017 memorandum of law, Kashmanian specifically moved for a "directed verdict" as to count one, the negligence claim, however, the court properly treated this memorandum of law as seeking to set aside the jury's verdict in favor of the plaintiff on count one. Further, the city, by way of motion filed on December 29, 2017, joined and incorporated Kashmanian's December 22, 2017 memorandum of law.

[6] The jury reasonably could have found Kashmanian's testimony that his goal was to assist in stopping the entire group of motorcycles and quads not credible given evidence that he passed other members of the group to close in on the plaintiff.

[7] The decisions of the Superior Court are split as to whether a police officer is entitled to governmental immunity for the operation of a motor vehicle. See *Williams* v. *New London*, Superior Court, judicial district of New London, Docket No. CV-12-6012328-S (April 7, 2014) (58 Conn. L. Rptr. 86) (collecting cases on both sides).

The plaintiff cites to several Superior Court cases for the proposition that a police officer's operation of a motor vehicle is ministerial conduct. See, e.g., *Letowt* v. *Norwalk*, 41 Conn. Supp. 402, 405–406, 579 A.2d 601 (1989) (relying on Rhode Island Supreme Court decision to hold that police officer driving patrol car to scene of accident is ministerial because "[o]rdinary citizens drive their cars every day, not just police officers . . . ."); *Borchetta* v. *Brown*, 41 Conn. Supp. 420, 424, 580 A.2d 1007 (1990) (relying on *Letowt* to determine that "operation of a police vehicle [on patrol duty] was a ministerial function"); *MacMillen* v. *Branford*, Superior Court, judicial district of New Haven, Docket No. 374004 (March 30, 1998) (21 Conn. L. Rptr. 561) (relying on *Letowt* to determine that operation of police vehicle on the way to crime scene is ministerial activity); *Hurdle* v. *Waterbury*, Superior Court, judicial district of Waterbury, Docket No. 0123428 (December 12, 1995) (relying on *Letowt* to determine that operation of police vehicle is ministerial activity); see also *Jones* v. *Lathram*, 150 S.W.3d 50, 53 (Ky. 2004)

(act of safely driving police cruiser, even in emergency, was ministerial because it does not require any deliberation or exercise of judgment).

The cases that the defendants cite stand for the contrary proposition that driving is a discretionary activity because it requires some degree of judgment. See, e.g., *Kajic* v. *Marquez*, Superior Court, judicial district of Hartford, Docket No. CV-16-6065320-S (August 16, 2017) (determining that police officer's operation of patrol car was discretionary because duty to use reasonable care "is a quintessentially discretionary duty because it involves the exercise of judgment in evaluating the circumstances requiring action or inaction"); *Paternoster* v. *Paszkowski*, Superior Court, judicial district of Fairfield, Docket No. CV-14-6042098-S (September 1, 2015) (determining that police officer's pursuit in patrol car, in violation of motor vehicle statutes, was discretionary).

[8] We note that § 14-283 (d) provides: "The provisions of this section shall not relieve the operator of an emergency vehicle from the duty to drive with due regard for the safety of all persons and property." The question of whether this language creates a ministerial duty to which governmental immunity would not apply is currently before our Supreme Court in *Borelli* v. *Renaldi*, SC 20232. That case involves the defendant officer's pursuit of a fleeing vehicle under § 14-283. We asked counsel at oral argument in the present case if we should stay this case pending the outcome of *Borelli*. Both counsel agreed that, because this case did not involve activity governed by § 14-283, resolution of the present case would not be impacted by our Supreme Court's decision in *Borelli*.

[9] Further, the policy determination as to whether a municipal police officer should be liable for operating a motor vehicle under all circumstances is best left to our legislature. See *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 412, 999 A.2d 682 (2010) ("[w]e are not in the business of writing statutes; that is the province of the legislature" [internal quotation marks omitted]); see also General Statutes § 52-556 ("[a]ny person injured in person or property through the negligence of any *state official or employee* when operating a motor vehicle owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury" [emphasis added]).