******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JANE DOE #1 *v.* KYLE FASOLD ET AL.

JANE DOE #2 *v.* KYLE FASOLD ET AL.

JANE DOE #3 *v.* KYLE FASOLD ET AL.

JANE DOE #4 ET AL. *v.* KYLE FASOLD ET AL.

JANE DOE #5 *v.* KYLE FASOLD ET AL.

JANE DOE #6 *v.* KYLE FASOLD ET AL.

JANE DOE #8 *v.* KYLE FASOLD ET AL.
(AC 47269)

Alvord, Elgo and Pellegrino, Js.

*Syllabus*

The plaintiffs jointly appealed from the trial court's rendering of summary judgment, in each of seven cases, for the defendant town with respect to the plaintiffs' claims of negligence and negligent supervision. The plaintiffs claimed that the court improperly rendered summary judgment in each case despite the existence of a genuine issue of material fact as to whether a work order request for maintenance made by a town employee created a ministerial duty to perform that maintenance in a prescribed way, thereby abrogating the town's governmental immunity protection and exposing the town to liability pursuant to statute (§ 52-557n) for its failure to complete the requested maintenance. *Held*:

The plaintiffs failed to establish that a genuine issue of material fact existed with respect to the nature of the town's duty because it was legally and logically correct for the trial court to conclude that the acts and omissions alleged in each complaint with respect to the requested maintenance were discretionary in nature, rather than ministerial, and, accordingly, the court properly determined that the town was entitled to judgment as a matter of law on its governmental immunity defense in each action.

Argued March 11—officially released August 5, 2025

*Procedural History*

Action, in each case, to recover damages for, inter alia, invasion of privacy, brought to the Superior Court in the judicial district of New Britain, where the cases

were consolidated; thereafter, in each case, the defendant town of Plainville filed an apportionment complaint; subsequently, in each case, the court, *Morgan, J.*, granted the motion for summary judgment filed by the defendant town of Plainville and rendered judgment thereon, from which the plaintiffs filed a joint appeal to this court. *Affirmed.*

*Ryan K. Sullivan*, with whom were *Julianne Lombardo Klaassen*, and, on the brief, *Paul M. Iannaccone*, for the appellants (plaintiffs).

*Thomas R. Gerarde*, with whom was *Eric E. Gerarde*, for the appellee (defendant town of Plainville).

*Opinion*

PER CURIAM. The plaintiffs, three adults and four minors, in seven underlying consolidated tort actions,[1] appeal from the judgments of the trial court, *Morgan, J.*, rendered in favor of the defendant town of Plainville[2] following the granting of its motions for summary judgment as to the third and fourth counts of the plaintiffs'

---

[1] The plaintiffs, Jane Doe #1, Jane Doe #2, Jane Doe #3, Jane Doe #4 PPA John Doe, Jane Doe #5 PPA John Doe, Jane Doe #6 PPA Jane Doe #7, and Jane Doe #8 PPA Jane Doe #9, were granted permission to proceed under pseudonyms due to the nature of the allegations in their complaints. "Per proxima amici, or [PPA], means by or through the next friend, and is employed when an adult brings suit on behalf of a minor, who was unable to maintain an action on his own behalf at common law." (Internal quotation marks omitted.) *Marciniszyn* v. *Board of Education*, 230 Conn. App. 592, 594 n.1, 330 A.3d 883 (2025).

[2] The plaintiffs also named Kyle Fasold as a defendant in their actions, and their claims against him are still pending in the trial court. Moreover, in the actions commenced by Jane Doe #4 and Jane Doe #5, the court granted the plaintiffs' respective motions to cite in Angela Lastrina as a defendant. Thereafter, the plaintiffs in those actions withdrew all claims against Lastrina. Because Fasold and Lastrina are not parties to this appeal from the partial summary judgments rendered by the trial court; see, e.g., *Tryon* v. *North Branford*, 58 Conn. App. 702, 703 n.1, 755 A.2d 317 (2000); in this opinion, we refer to the town of Plainville as the defendant and to Fasold by name.

respective complaints in each action.[3] The plaintiffs' sole claim on appeal is that the court improperly rendered summary judgments despite the existence of a genuine issue of material fact as to whether a work order request for maintenance, made by an employee of the defendant, created a ministerial duty to perform the maintenance in a prescribed way, thereby abrogating the defendant's governmental immunity protection and exposing the defendant to liability pursuant to General Statutes § 52-557n[4] for its alleged failure to do so. We disagree and, accordingly, affirm the judgments of the trial court.

The record before the court, viewed in the light most favorable to the plaintiffs as the nonmoving parties, reveals the following relevant facts and procedural history. From September, 2017, through approximately March, 2020, the seven plaintiffs were either members of and/or coaches for the Plainville Blue Dolphins Swim Club (swim club)[5] and/or lifeguards at the Plainville

[3] The plaintiffs' claims against Fasold, set forth in counts one and two of their respective complaints, sound in invasion of privacy and negligent infliction of emotional distress.

[4] General Statutes § 52-557n provides in relevant part: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . ."

Although § 52-557n has been amended since the events underlying this case; see Public Acts 2023, No. 23-83, § 1; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[5] The swim club was made an apportionment defendant in each underlying action by the defendant, but it was not a party to the summary judgment motions, and it is not participating in this appeal.

High School (high school) pool. The swim club used the aquatic facilities at the high school. Kyle Fasold was a parent volunteer for the swim club and a board member and/or vice president of its Parents' Association. The high school aquatic facilities included a pool, recreation staff facilities, and locker rooms. The recreation staff facilities shared a door with the girls' locker room and housed a recreation staff locker room/closet area that had a door with a clear glass paned window with a view directly into the girls' locker room. That window had been covered with poster boards, which prevented the ability to see through it. At some point, however, a square piece had been cut from the poster boards, which left a small opening that allowed a view into the girls' locker room.

As a member of the swim club, Fasold had access to the recreation staff locker room/closet area and, on numerous occasions during the aforementioned time period, he manipulated the covering on its window in order to gain visual access to the girls' locker room. Using a cellular device and/or a digital camera, Fasold took photographs and/or recorded videos of the plaintiffs, through that window, while they were in various stages of undress and/or were toileting. Fasold's actions were discovered in or about February, 2020, after he uploaded images with identifiable metadata to the Internet and an investigation ensued. Fasold was charged with crimes related to his actions, and he ultimately entered into an agreement with the United States Attorney's Office for the District of Connecticut whereby he pleaded guilty to certain of those charged crimes.

The defendant and its officers, agents, servants and/or employees, owned, controlled, possessed, operated and/or maintained the high school, and it allowed the

swim club and its members to use and have access to the high school's pool and aquatic facilities. On February 5, 2018, Scott Martin, who was the custodial manager for the defendant's board of education, prepared a work order that requested that "General Maintenance" be performed at the high school "girls locker room/pool." The "Description" section of the work order stated: "Cut and fit colored/textured plexiglass in door from team coach office that leads to team locker room off pool area. Time Available: anytime." The request was deemed a "Medium" priority and the "Req. Completion Date" section of the form was left blank. Martin assigned the work order request to Terry Archer, who was employed by the defendant's board of education as a maintainer in the physical services department. Neither Martin nor Archer was a policy maker or an executive decision maker for the defendant.

The work order request reflects, at the top of the form, a "Completion Date" of February 8, 2018, and its "Status" reads "Closed Work Orders."[6] The window in the door, however, was not replaced with "colored/ textured plexiglass . . . ." Rather, a March, 2020 inspection of the high school girls' locker room revealed that a small square piece of black construction paper had been taped to the poster boards to cover the hole that previously had been cut therein.

---

[6] The plaintiffs maintain, and the summary judgment evidence viewed in the light most favorable to them suggests, that the work order request was issued in response to a concern that a parent relayed to Kim Crowley, who, at the time, was the assistant director of the defendant's recreation department, that the poster board that covered the window was torn and that someone may have been manipulating it. Crowley then submitted an "order . . . to the school administration . . . the school facilities people" to have "the hole in the . . . covering of the window . . . repaired." There is no evidence in the record, however, regarding the nature of the work order, the internal discussions, if any, that preceded its creation or the duties and expectations of the custodial staff in relation thereto.

On various dates between September, 2020, and March, 2021, the plaintiffs brought actions for damages related to Fasold's conduct; see footnote 2 of this opinion; and the court, *Morgan, J.*, sua sponte consolidated the actions. See Practice Book § 9-5.[7] Each respective complaint states claims against the defendant for negligence pursuant to § 52-557n in count three and negligent supervision in count four.[8] The plaintiffs alleged, inter alia, that they suffered injuries and losses arising from Fasold's "inappropriate and disturbing conduct" and that those injuries and losses were caused by the negligence and carelessness of the defendant because its officers, agents, servants and/or employees "failed to ensure that minor and adult females, including the plaintiff[s], had a safe, secure and private dressing area . . . ."

In its answers to each of the plaintiffs' complaints, the defendant denied the plaintiffs' negligence allegations and raised governmental immunity as a special defense to the third and fourth counts. Thereafter, on April 28, 2023, the defendant filed in each action a motion for summary judgment. The defendant claimed that it was entitled to judgment on counts three and four of the plaintiffs' complaints as a matter of law

[7] Practice Book § 9-5 provides in relevant part: "(a) Whenever there are two or more separate actions which should be tried together, the judicial authority may . . . upon its own motion, order that the actions be consolidated for trial. . . .

"(c) The court files in any actions consolidated pursuant to this section shall be maintained as separate files and all documents submitted by counsel or the parties shall bear only the docket number and case title of the file in which it is to be filed."

[8] The fourth counts of the complaints in the actions brought by Jane Doe #4, Jane Doe #5, Jane Doe #6, and Jane Doe #8 allege that they are brought pursuant to § 52-557n, whereas the fourth counts of the complaints in the actions brought by Jane Doe #1, Jane Doe #2, and Jane Doe #3, do not reference that statute. In all other material respects, however, the allegations against the defendant in each action are identical.

because (1) discretionary governmental act immunity barred the plaintiffs' negligence claims, (2) the plaintiffs could not show that they were identifiable persons subject to imminent harm, as required to fall within the relevant exception to governmental immunity, and (3) the defendant could not be held liable for the intentional, criminal acts of Fasold.[9]

On July 24, 2023, the plaintiffs filed memoranda in opposition to the defendant's motions for summary judgment in their respective cases.[10] Each plaintiff argued that there were genuine issues of material fact with respect to whether the defendant had violated ministerial duties (1) to repair and maintain the glass window in the storage room door and (2) to report Fasold's suspicious conduct. The plaintiffs further argued that, even if the defendant's alleged acts or omissions were discretionary in nature, there remained genuine issues of material fact as to whether the plaintiffs were identifiable persons subject to imminent harm and, thus, whether an exception to governmental immunity applied. The plaintiffs did not respond to or address the defendant's claim that it could not be held vicariously liable for the intentional, criminal acts of Fasold.

On August 23, 2023, the defendant filed a reply memorandum in support of its motion for summary judgment in each action, and it attached to each one an affidavit of Robert E. Lee, the defendant's chief executive officer and town manager between 2017 and 2020. Lee averred

[9] In support of each motion, the defendant submitted a memorandum of law and sixteen exhibits, which included excerpts from several deposition transcripts and an affidavit from Ben Dalena, who was employed by the defendant as its assistant recreation director.

[10] In support of their memoranda in opposition, each plaintiff submitted, as an exhibit, an excerpt of her deposition transcript and the same thirteen other exhibits, which included, among other things, excerpts from several other deposition transcripts, a redacted police report, and a copy of the February 5, 2018 work order request.

in his affidavit that Martin and Archer were not policy makers or executive decision makers for the defendant at any time during their employment.[11]

On December 28, 2023, the court issued memoranda of decision rendering summary judgments in favor of the defendant on counts three and four of each complaint. The court concluded, on the basis of the pleadings and the evidence submitted by the parties, that the defendant was entitled to governmental immunity as a matter of law. With respect to the work order, in particu-

---

[11] The plaintiffs filed motions to strike "and/or disregard the defendant's reply brief[s] in resolving the merits of the . . . motion[s] for summary judgment" on grounds that they were untimely filed and because they sought to introduce new evidence and arguments that should have been raised in the defendant's initial filings. The plaintiffs argued, among other things, that Lee's affidavit constituted "new and untimely evidence" as to "whether the February 8, 2018 work order constituted a ministerial duty," that the defendant should not be able to introduce and rely upon it and that the court should not consider the merits of the replies. The court denied the plaintiffs' motions to strike, explaining that the "tardy filing[s] did not work undue prejudice or injustice to the plaintiff[s]" and that the "reply brief[s] appropriately respond[ed] to evidence and arguments made by the plaintiff[s] in [their] objection[s] to the defendant's summary judgment motion[s]." The plaintiffs have not challenged on appeal the court's denial of their motions to strike. See *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 221 Conn. App. 475, 485, 302 A.3d 339 (claim raised by party at trial is abandoned if it is not raised on appeal), cert. denied, 348 Conn. 923, 304 A.3d 445 (2023). Nevertheless, in their brief to this court, the plaintiffs now characterize Lee's affidavit as "[e]xtratextual evidence [that] is not required for this court's analysis and [claim that it] should not have been relied on by the trial court." As the plaintiffs raise this claimed error by the trial court for the first time on appeal, after abandoning their challenge to the court's denial of their motions to strike, we will not review its merits. See *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, supra, 489–90; see also *Capital for Change, Inc.* v. *Wall Street Associates, LLC*, 232 Conn. App. 646, 655–56,     A.3d     (2025), petition for cert. filed (Conn. June 3, 2025) (No. 240392). Moreover, this claim is inadequately briefed. See *U.S. Bank Trust, National Assn.* v. *Shuey*, 232 Conn. App. 618, 620 n.2,     A.3d (2025) ("We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.)), petition for cert. filed (Conn. June 9, 2025) (No. 240395).

lar, the court determined that it was "simply evidence of the discretionary nature of the defendant's duties with respect to inspection, maintenance, and repairs, rather than evidence of the existence of a ministerial duty."[12] This appeal followed.[13] Additional facts will be set forth as necessary.

Before turning to the plaintiffs' claim on appeal, we set forth the standard of review applicable to a trial court's decision to grant a motion for summary judgment. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

[12] In rendering summary judgments, the court also concluded that there was no genuine issue of material fact that (1) "none of the defendant's officials had reasonable cause to suspect or believe that Fasold was abusing the plaintiffs or subjecting them to an imminent risk of serious harm and, therefore, the mandatory duty to report [suspected harm pursuant to General Statutes (Rev. to 2017) §§ 17a-101 and 17a-101a] was not triggered," (2) "the plaintiffs were not identifiable persons subjected to imminent harm" and, thus, that exception to governmental immunity was not applicable, and (3) "Fasold's conduct was intentional rather than negligent" and "the exclusionary language of § 52-557n (a) (2) would shield the defendant from vicarious liability to the plaintiffs" on the basis of such conduct. The plaintiffs have not challenged on appeal the court's conclusions in these regards, and we deem any such claims abandoned. See *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 221 Conn. App. 475, 485, 302 A.3d 339 ("claims of error not briefed are considered abandoned" (internal quotation marks omitted)), cert. denied, 348 Conn. 923, 304 A.3d 445 (2023).

[13] The court's decision to grant the defendant's motions for summary judgment did not dispose of all the counts in each complaint, and counts one and two against Fasold remain pending in each of the consolidated actions. Even so, the court's decisions "dispose[d] of all causes of action in [the plaintiffs' respective complaints] . . . brought . . . against [the defendant]," such that they are final judgments. Practice Book § 61-3; see also *Asnat Realty, LLC* v. *United Illuminating Co.*, 204 Conn. App. 313, 319 n.6, 253 A.3d 56 (decision that "disposed of all causes of action against those particular defendants . . . constituted an appealable final judgment under Practice Book § 61-3"), cert. denied, 337 Conn. 906, 252 A.3d 366 (2021). The plaintiffs, therefore, have appealed from final judgments, and this court has jurisdiction to hear their appeal.

. . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle [it] to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Washburne* v. *Madison*, 175 Conn. App. 613, 620, 167 A.3d 1029 (2017), cert. denied, 330 Conn. 971, 200 A.3d 1151 (2019).

We next set forth the well settled law of this state regarding the liability of municipalities. "According to our Supreme Court, [a] municipality itself was generally immune from liability for its tortious acts at common law . . . . [The court] also [has] recognized, however, that governmental immunity may be abrogated by statute. . . . [Section] 52-557n (a) (1) provides in relevant part: Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . [Our Supreme Court] previously [has] concluded that [t]his language clearly and expressly abrogates the traditional

common-law doctrine in this state that municipalities are immune from suit for torts committed by their employees and agents. . . .[14]

"Subdivision (2) of § 52-557n (a) lists two exceptions to the statutory abrogation of governmental immunity. The exception relevant to this appeal provides: Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . . The statute, thus, distinguishes between discretionary acts and those that are ministerial in nature, with liability generally attaching to a municipality only for negligently performed ministerial acts, not for negligently performed discretionary acts. . . .

"The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. . . . In order to create a ministerial duty, there must be a city charter provision, ordinance, regulation, rule, policy, or any other directive [compelling a municipal employee] to [act] in any prescribed manner. . . .

"In general, the exercise of duties involving inspection, maintenance and repair of hazards are considered discretionary acts entitled to governmental immunity. . . . A municipality necessarily makes discretionary policy decisions with respect to the timing, frequency,

---

[14] "Our Supreme Court has cautioned that '[s]tatutes that abrogate or modify governmental immunity are to be strictly construed' because if 'a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of construction.' . . . *Rawling* v. *New Haven*, 206 Conn. 100, 105, 537 A.2d 439 (1988)." *DiMiceli* v. *Cheshire*, 162 Conn. App. 216, 223 n.5, 131 A.3d 771 (2016).

method and extent of inspections, maintenance and repairs. . . . Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where it is apparent from the complaint. . . . [W]hether an act or omission is discretionary in nature and, thus, whether governmental immunity may be successfully invoked pursuant to § 52-557n (a) (2) (B), turns on the character of the act or omission complained of in the complaint. . . . Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions *necessarily* involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper." (Citations omitted; emphasis in original; footnote in original; internal quotation marks omitted.) *DiMiceli* v. *Cheshire*, 162 Conn. App. 216, 223–25, 131 A.3d 771 (2016).

In their complaints, the plaintiffs allege that the defendant "failed to ensure that minor and adult females, including the plaintiff[s], had a safe, secure and private dressing area" at the high school. They claim that Archer's failure to maintain or repair the window in the manner described in the work order "constitutes a violation of a ministerial duty" because the work order was a "directive that, by its clear language, compels a municipal employee to act in a prescribed manner, without the exercise of judgment or discretion." (Emphasis omitted; internal quotation marks omitted.) The defendant claims, in response, that the "work order request is not a mandate of legal authority" but is, rather, "evidence of the defendant's officials exercising judgment in handling a maintenance and repair issue." (Emphasis omitted.) We agree with the defendant.

The work order itself provides the sole basis for the plaintiffs' claim that the defendant's otherwise discretionary duty to repair and maintain the window and

provide them with "a safe, secure and private dressing area" was ministerial in nature. The plaintiffs rely on the "plain language" of the work order to support their argument that it "prescribed the manner in which the work was to be performed" and did not "afford . . . Archer discretion in the way in which he was to remedy the problem." The work order, however, expressly pertains to "General Maintenance," it lists Martin as the "Requester," it had a "Request Date" of February 5, 2018, and there was no "Req. Completion Date," thereby leaving the time for performance open-ended and within Archer's discretion. Cf. *Doe* v. *Madison*, 340 Conn. 1, 32, 262 A.3d 752 (2021) ("[s]pecificity is required in all aspects of [a] directive").

Moreover, although the description of the requested maintenance states "[c]ut and fit colored/textured plexiglass" into the window of the door to the recreation staff locker room/closet area, the work order does not state that Archer had no discretion in this regard, and there is no other evidence in the record to support the plaintiffs' argument that he had none. Cf. *Cole* v. *New Haven*, 337 Conn. 326, 342, 253 A.3d 476 (2020) (police sergeant's testimony, in combination with police department's general order and Department of Public Safety's statewide policy, established existence of ministerial duty as matter of law). Indeed, there is no evidence regarding the nature of the work order, the internal discussions, if any, that preceded the work order's creation or the duties and expectations of the custodial staff in relation thereto.[15] To this end, there is no evidence that the "Description" set forth in the work order constituted "instructions" or a "directive," as the plaintiffs argue, let alone evidence that the work order was a mandate of legal authority that Archer failed to follow. See *Borelli* v. *Renaldi*, 336 Conn. 1, 12, 243 A.3d 1064

[15] In fact, there is no evidence, by way of deposition testimony or affidavits, from Martin or Archer, themselves.

(2020) ("[a] ministerial act is one which a person performs in a given state of facts, in a prescribed manner, in obedience to the *mandate of legal authority*, without regard to or the exercise of his own judgment [or discretion] upon the propriety of the action being done" (emphasis added; internal quotation marks omitted)). This evidentiary lacuna is particularly significant in the present case because, as our Supreme Court has recognized, "there ordinarily is no legal directive mandating the specific manner in which officials must perform [inspection, maintenance and repair] tasks"; *Northrup* v. *Witkowski*, 332 Conn. 158, 170, 210 A.3d 29 (2019); and the language of the work order upon which the plaintiffs' rely simply does not establish an exception to this rule. See *Doe* v. *Madison*, supra, 340 Conn. 32 ("descriptions of general practices or expectations that guide an employee's exercise of discretion do not create a ministerial duty").

Furthermore, Martin and Archer were not policy makers or executive decision makers for the defendant. Rather, they were employees, working for the defendant's board of education in its physical services department. Martin was the "custodial manager," and Archer was a "maintainer . . . ." Although Martin had the authority to create the work order and to assign it to Archer, there is no evidence that Martin was not using his discretion and engaging in day-to-day decision-making regarding maintenance and repairs when he did so. The mere fact that Martin delegated the task to Archer by way of the work order in no way altered the task's discretionary nature. See, e.g., *Grignano* v. *Milford*, 106 Conn. App. 648, 657, 943 A.2d 507 (2008) (discretionary duty is not rendered ministerial merely because municipality codifies it as ordinance where nature of duty remains unchanged). The work order reflected the discretionary nature of the defendant's duties with respect

to inspection, maintenance and repairs, not the existence of a ministerial duty.

"If we were to conclude otherwise, virtually *any* attempt by a municipal agency to ensure that its discretionary duties are regularly and properly carried out would convert its discretionary duty into a ministerial duty, thereby creating a disincentive for municipal agencies to make such attempts and undermining the very policy considerations that the doctrine governmental immunity was intended to advance. See *Violano* v. *Fernandez*, [280 Conn. 310, 319, 907 A.2d 1188 (2006)] ('[d]iscretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury' . . . )." (Emphasis in original.) *Northrup* v. *Witkowski*, supra, 332 Conn. 188.

On the basis of our plenary review of the pleadings and the parties' submissions, we conclude that the plaintiffs have failed to establish that a genuine issue of material fact exists with respect to the nature of the defendant's duty in this case. Because it was legally and logically correct for the court to conclude that the acts and omissions alleged in each complaint were discretionary in nature, and not ministerial as the plaintiffs' claim, the court properly determined that the defendant was entitled to judgment as a matter of law on its governmental immunity defenses in each of these consolidated actions.

The judgments are affirmed.